[Sac. No. 904.  Department One.—March 12, 1902.]

## CHARLES BROOKS, Appellant, v. J. D. LAWSON, Administrator, etc., Respondent.

ESTATES OF DECEASED PERSONS—CONTINGENT CLAIM—PROMISE TO PAY WHEN LAND WAS SOLD—MATURITY OF ACTION.—An action upon a rejected claim against the estate of a deceased person, based upon a promise to pay money when certain land was sold, is upon a contingent claim, and cannot be maintained prior to the sale of such land, and must be brought, if at all, within two months thereafter.

ID.—ACTION UPON DISALLOWED CLAIM.—In an action upon a disallowed claim the plaintiff can only recover upon the claim as presented and rejected, and cannot recover for any other cause of action.

ID.—FINDING AGAINST CONTRACT SUED UPON—EVIDENCE—DESULTORY CONVERSATION.—Where the conversation with the deceased, shown by the evidence, appeared to be of a desultory, family, and social nature, rather than in the way of entering into any specific agreement or contract, a finding that the evidence did not support the promise set out as the basis of the claim sued upon will not be set aside upon appeal.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial.  H. M. Albery, Judge presiding.

The facts are stated in the opinion of the court.

R. Clark, for Appellant.

Charles W. Thomas, for Respondent.

VAN DYKE, J.—Action upon a rejected claim against the estate of Rachael Jeans, deceased. The claim as presented to the defendant administrator was disallowed, a copy of which is set forth in the complaint as the basis of the action, and is as follows : " In March, 1895, in the state of Iowa, where claimant then resided, deceased residing with him, the deceased promised the claimant, that if he would sell out his property and come with her to California, and bring with him his wife and family, claimant's wife being a granddaughter of deceased, that deceased would give claimant $100, which she did, toward the payment of his expenses from Iowa to California, and would pay him $1,000 on their arrival to California, as soon as she could sell certain lands which she then owned, and which were situated in California, which said lands were worth upwards of $1,000; that deceased arrived in California in March, 1895, whereupon deceased gave claimant the right to sell said land and pay himself said $1,000; but claimant was not able to sell said lands until the death of the deceased, she dying the legal owner of said lands, and the same now being in the hands of the executor for the payment of the debt; that in pursuance of said agreement, claimant did sell his said property in Iowa and come to California with his family, with deceased, and in all respects fully carried out his part of said contract." The court found that the evidence did not sustain the promise or agreement set out as the basis of the plaintiff's claim. The appeal is from the judgment in favor of the defendant and from an order denying plaintiff's motion for a new trial. The main contention of the appellant is, that the findings are not supported by the evidence.

The testimony, excepting the wife of the plaintiff, is by deposition. Her testimony, in substance, is: "Mrs. Jeans told plaintiff that if he would sell his property for what he could get and come with her to California, she would give him $100 toward defraying his expenses, and after her arrival in California, would pay him a thousand dollars as soon as she could sell her lands in California. Plaintiff sold his property in Iowa for less than its value, and with his wife [the witness] and children came with deceased to this state, she paying $100 towards the expenses. After the arrival, deceased gave witness a small house and lot near her residence. She never effected a sale of her lands prior to her death. Witness and

her sister were grandchildren of the deceased, and are legatees under the will. The deceased said she wanted to give each of her children a thousand dollars, and talked of going to Oregon to buy a farm for her son Benjamin." L. M. Brooks, by deposition, testifies, in substance: "Deceased said that plaintiff would n't lose anything by going to California; that she would pay the expenses and give him all the work he could do, and when the place was sold he should have a thousand dollars." Mrs. M. M. Clark, by deposition, states, in substance: "The deceased wanted plaintiff and his wife to go to California with her; that it made no difference if he had to sell his property at a loss, she would make it all right; that she would pay them [plaintiff and his wife] a thousand dollars; would pay plaintiff $2.50 per day for each day's work on her ranch, and give them house rent free, and a share of the fruit; and when she sold some of her property she would give them a thousand dollars and her son Bennie a thousand dollars to go to Oregon, and her granddaughter Mabel Brooks also a thousand dollars when she sold her property; that she would give plaintiff a thousand dollars just as soon as she sold some of the property, whether plaintiff went to Oregon or not." Mrs. C. A. Brooks, mother of the plaintiff, in her deposition states, in substance: "Deceased said she wanted plaintiff to help care for her property; that she would pay his way there, and insure him work; and, if he did n't get work, she would keep him so that he need n't want; that her place rented for $250 a year, and that she would give him free rent for five years, or, if he did n't take that he was to have the $1,000. She [deceased] promised to let them [plaintiff and wife] have the use of the farm; promised to give them work; and promised to give him $1,000 for going; and to give him the house to live in free of rent, a chance of raising poultry, and the fruit." Mrs. J. T. Brooks, in her deposition states, in substance: "I had two or three conversations with her, in which she said that she wanted to sell her property and go to Oregon and wanted Charlie Brooks [plaintiff] to go with her, and said if he would go, she would buy him a farm. . . . She wanted Gertie and Charlie [plaintiff and his wife] to go with her to California and on to Oregon, if she could make arrangements. . . . I was present at a conversation between Charlie Brooks [plaintiff], Mrs. Jeans [deceased], and myself; in

that conversation she stated, that she wanted to sell her property in California and go to Oregon and buy a farm for Gertie and Charlie.'' The deceased at the time of these occurrences was visiting in Iowa with her son Benjamin Bynum and two grandchildren, wife of plaintiff and Mabel Brooks, and the testimony shows that her anxiety, which seems to have been quite natural, was to induce her near relatives to go and live with or near her in California. The conversations appeared to be of a desultory, family, and social nature, rather than in the way of entering into any specific agreement or contract. We cannot say, from all the testimony taken together, that the court was not justified in finding that it does not support the particular and specific contract set forth as the basis of the claim sued upon. That, it seems, was a bare promise by Mrs. Jeans that if he would come to California she would give him a thousand dollars when she could sell her land. And this, the testimony discloses, was only one of several promises or inducements made by the deceased in this connection.

The holder of a claim against the estate of a deceased person can bring an action therefor only after it has been presented and rejected or disallowed. (Code Civ. Proc., sec. 1500.) ''In such action he can recover only upon the claim which has been so presented and rejected, and is not entitled in that action to recover against the executor for any other cause of action.'' (*Lichtenberg* v. *McGlynn,* 105 Cal. 45.)

Again, the agreement or promise which is the basis of this action, as set forth in the complaint, was contingent,—that is, that she would pay the thousand dollars as soon as she could sell certain lands which she then owned in California,—and it is stated in the complaint, and disclosed by the testimony, that the lands had not been sold when the action was brought or up to the time of the trial. This action was brought as upon a matured claim, but in case of a contingent claim it must be brought ''within two months after it becomes due.'' (Code Civ. Proc., sec. 1498.) But this does not mean that it may be brought before it becomes due. In *Morse* v. *Steele,* 132 Cal. 456, it was said: ''This claim is both contingent and not due. Indeed, no contingent claim is due. But by the happening of the event upon which the contingency depends the claim becomes due, and then may be enforced as any other claim

which becomes due.    If the event upon which the contingency depends never happens, the claim never becomes due, and necessarily no action can be or should be brought upon it."

Judgment and order affirmed.

Garoutte, J., and Harrison, J., concurred.