[Civ. No. 11035. First Appellate District, Division Two.—May 31, 1939.]

H. JOOST, Respondent, v. EDMUND E. CASTEL, Executor, etc., et al., Appellants.

A. E. Levinson, *in pro. per.*, Leon Samuels, Hugh K. Mc-Kevitt, Douglas A. Nye and Joseph F. DeMartini for Appellants.

Morris, Jaffa & Sumski for Respondent.

STURTEVANT, J.—From a judgment in favor of the plaintiff the defendants have appealed.

The action is based upon two claims filed against said estate, both of which were rejected by said representatives. Both claims are based upon a lease made and entered into between H. Joost and Marie A. Joost, as lessors, and Charles A. Munroe, as lessee. The lease was for a period of ten years commencing July 15, 1930. Charles A. Munroe died March 17, 1935.

The amended complaint contained three counts, all of which sought to have the said claims established and approved as valid claims against said estate. The first count stated a cause of action at law to recover rent due at the time of filing said complaint. The second stated a cause of action in equity and sought to have deposited in court the amount of rent which was to become due from and after the date of the filing of said complaint, and up to the end of the term of the lease. The third count also stated a cause of action in equity, and sought to have the court fix the amount of attorney's fees to which the landlord's attorney was en-

titled under said lease for the bringing of said action, and for such other sums as might contingently become due the lessor under said lease. At the trial, however, the only recovery sought under this third cause of action was the attorney's fees.

The trial court caused a decree to be entered in favor of the plaintiff on each of the three counts. From that decree the defendants have appealed. However, in this court they make no objection to the award on the first count, but they complain of the award made on the other two counts.

■ The defendants contend that the death of Charles A. Munroe had the effect of terminating the lease. The lease contained numerous covenants. Each paragraph had a heading. Two paragraphs are involved in the contention stated. Those paragraphs were as follows:

"Assignment and Subletting.

"Said lessee agrees not to assign this lease or any interest therein, nor let or underlet the whole or any part of said demised premises, without the written consent of the said lessor first had and obtained; and neither this lease or any interest therein, shall be assigned or assignable by operation of law or otherwise.

"Nontransferable Involuntarily.

"Said lessee hereby agrees that neither this lease nor any interest therein shall be assignable or transferable by operation of law, and it is hereby mutually agreed, covenanted and understood by and between the parties hereto that in the event said lessee be adjudged bankrupt or insolvent, or in the event said lessee makes an assignment for the benefit of his creditors this lease at the option of the lessor shall immediately end and terminate and shall in no wise be treated as an asset of said lessee after the exercise of the aforesaid option; and the lessor shall have the right to forthwith re-enter said premises as of his former and original estate.

"The words 'lessor' and 'lessee' as herein used include, apply to, bind and benefit the heirs, executors, administrators, successors and assigns of the lessor and lessee."

In presenting the contention last mentioned the defendants contend that by reason of the covenants quoted the parties agreed that under the facts of this case the lease was terminated. The covenant entitled "Assignment and Subletting" clearly applied to voluntary acts. But the record

before us does not disclose voluntary acts. The paragraph entitled "Nontransferable Involuntarily" shows that if an involuntary assignment was made by the lessee the question whether a forfeiture arose rested " . . . at the option of the lessor". Furthermore there was no evidence of either bankruptcy or an assignment for the benefit of the creditors' of the lessee. It follows that the lease had not expired by virtue of its own terms. And, we do not understand that the defendants claim, in the absence of a covenant to that effect, that the death of the lessee or of the lessor in a lease will, by operation of law, terminate the lease before the end of the term thereof. (Civ. Code, sec. 1934; 15 Cal. Jur. 768.)

Again it is settled law that an ordinary covenant against assignment does not bind the executors of the tenant and is not broken by a transfer of the leased premises by operation of law. In the case of *Stratford Co.* v. *Continental Mtg. Co.,* 74 Cal. App. 551 [241 Pac. 429], after a lease containing a similar covenant had been executed the tenant died. During the administration of the tenant's estate his administratrix sold the leasehold interest. The purchaser went into possession under the assignment. The lessor commenced an action claiming the rights of the lessee had been forfeited. The trial court rendered a judgment against it. The judgment was affirmed by the District Court of Appeal. The Supreme Court denied a transfer. On that authority and the cases cited therein we hold the contention of the defendants may not be sustained.

The defendants next assert that the claims of the plaintiff are not contingent within the meaning of our statutes. They cite several cases involving statutes in bankruptcy. It is not claimed that the statutes are either identical with or similar to the sections of the Probate Code. Those authorities are not helpful. Under facts closely parallel to the facts in the instant case it has been held that similar claims were contingent. (*Verdier* v. *Roach,* 96 Cal. 467, 474, 475 [31 Pac. 554] ; *Fratt* v. *Hunt,* 108 Cal. 288, 293 [41 Pac. 12] ; *Morse* v. *Steele,* 132 Cal. 456, 458 [64 Pac. 690] ; *Brooks* v. *Lawson,* 135 Cal. 10, 13 [68 Pac. 97].) Continuing the defendants claim that such authorities are not in point because in the instant case the claims of the plaintiff rested on several contingencies. That distinction is not helpful. It could have been made with equal force in any one of the

cases just enumerated. However, as will hereinafter more fully appear, we think the distinction has no merit. The defendants also advert to the fact that the claims were not due. That will be conceded at once. Continuing they earnestly contend that whether the claims were " . . . due, not due, or contingent . . . " the plaintiff was bound to present them. (Prob. Code, sec. 707.) ■ Then, relying upon the proposition just stated, the defendants argue that the plaintiff was not entitled to maintain an action at law to recover thereon, and that the action before us was prematurely brought. (*Miller* v. *Miller*, 171 Cal. 269 [152 Pac. 728]; *Morse* v. *Steele, supra; Brooks* v. *Lawson, supra.*) But, as clearly pointed out by the plaintiff, he did not commence an action at law on the items referred to but commenced an action in equity. As to plaintiff's action in equity the defendants cite no authorities to the effect that said action was brought prematurely.

In what we have just said we assumed that under a proper set of facts the plaintiff was entitled to enforce his rights by maintaining an action in equity. The defendants cite no authorities to the contrary. In our reading we have not found any disagreement in the authorities. It seems to be the settled law both in England and America, that such actions are proper. (1 Pom. Eq. Jur., sec. 112, subd. 7, div. 3; 3 Pom. Eq. Jur., sec. 1154; *Verdier* v. *Roach, supra; Newman* v. *Burwell,* 216 Cal. 608, 612 [15 Pac. (2d) 511] ; *Dabney* v. *Dabney,* 9 Cal. App. (2d) 665, 671–673 [51 Pac. (2d) 108] ; *Bankers Surety Co.* v. *Meyer,* 205 N. Y. 219 [98 N. E. 399, Ann. Cas. 1913D, 1218].) In the case last cited, *Bankers Surety Co.* v. *Meyer,* the facts were that the decedent had executed five promissory notes which would not be due until after the date for closing the estate. The holder commenced an action in equity to establish the validity of its notes and obtain equitable relief. On page 224 the court said: "Ordinarily, where the surrogate's court has ample power to protect the rights of the parties by enforcing a just and proper administration of a decedent's assets, the Supreme Court will not undertake the administration of his estate. But it is well established that when a surrogate's court with its limited jurisdiction is unequal to the task of grappling with special circumstances, the Supreme Court will entertain jurisdiction and avoid a failure of remedy or a miscarriage of

justice. (*Hard* v. *Ashley,* 117 N. Y. 606 [23 N. E. 177] ; *Haddow* v. *Lundy,* 59 N. Y. 320, 326; *Matter of Smith,* 120 App. Div. 199 [105 N. Y. Supp. 223] ; *Post* v. *Ingraham,* 122 App. Div. 738 [107 N. Y. Supp. 737].) This is a case within the exception, and the form of the relief which plaintiff asks is sanctioned by authority as well as principles of justice. It does not seek to recover a judgment on its notes. It asks that an action may be maintained to establish their validity and that the plaintiff is a creditor of the estate of the decedent and entitled to share in its distribution.'' We conclude therefore it is well settled that under certain circumstances a claimant may apply to a court of equity to protect and enforce rights when, as here, the statute has not conferred full powers on the probate court.

█ The defendants then assert the evidence was insufficient to justify the decision. The judgment, as recited above, was a decree in equity. That decree was based on a set of findings that appears to be full and complete. The defendants do not specify any finding that was not supported by the evidence. From our examination we find no finding, material to the action, that was not supported by substantial evidence. However, if we go behind the findings, the facts were as follows: The property described in the lease was occupied by Charles A. Munroe as a store and factory. He had conducted a factory making women's apparel and selling the same. For some time prior to his death he employed Reinhold Henzschel as a foreman or manager. Moreover, in his will the decedent bequeathed said business to Mr. Henzschel. Before vacating the leased premises the defendants did not find a tenant ready, able and willing to take over the leasehold at any set price and did not introduce any such person to the plaintiff. They talked to a realtor who in turn interviewed Mr. Paul of Eureka, but no effort was made to enter into a binding contract with him as a tenant of the premises. After the defendants vacated the premises the plaintiff rented the same to Mr. Henzschel at a reduced rent. The defendants now complain that the plaintiff did not do all he should have done to mitigate their damages. It is sufficient to state that all of these matters were presented to the trial court and after hearing all the evidence the trial court made findings against the defend-

ants. There was no finding that was not supported by the evidence.

■ The decree appealed from operates indirectly to establish and protect the plaintiff's primary rights. It does not expressly nor directly declare, establish or enforce the ultimate right, estate, or interest of the plaintiff; but its object is to perfect and complete the means by which such right, estate, or interest is evidenced or secured, or to remove obstacles which hinder the enjoyment of such right. (1 Pom. Eq. Jur., sec. 171, p. 214.) In other words the equitable action does not purport to hear and determine the ultimate amount of the contingent claim. But it does purport to lay a foundation on the basis of which such a determination can at the proper time be made. Apparently failing to take into consideration the exact terms of the judgment, the defendants make these objections. (1) They again point out that there are a number of contingencies on the happening of which their liability may be decreased or entirely eliminated. Conceding such to be the facts, they can be and doubtlessly will be duly inquired into at the proper time and in the proper court. (2) Because the plaintiff entered, and relet the premises, the defendants assert their liability, if any, is for damages and not for rent. That assertion is not well founded. (*Phillips-Hollman, Inc.,* v. *Peerless Stages,* 210 Cal. 253, 261 [291 Pac. 178].) Moreover, whether the liability of the defendants rests on a claim for rent or a claim for damages, such fact, if material, will likewise be inquired into in due time. (*Verdier* v. *Roach, supra.*)

■ The last contention made by the defendants is that the allowance of attorney's fees was unauthorized. They do not contend the lease did not contain a covenant on that subject. They seem to contend that the trial court based its award on some matters that were not factors contained in said covenant. The record does not support them. No part of the record is called to our attention showing that any immaterial matter entered into the determination of the liability of the defendants under the covenant to pay attorney's fees. The presumption is against the defendants and in support of the judgment. As to the amount of the award we understand the defendants to contend the trial court did not adopt the testimony given by certain expert witnesses.

Of course, it was not bound to do so. (*Zimmer* v. *Kilborn,* 165 Cal. 523 [132 Pac. 1026, Ann. Cas. 1914D, 368].)

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 27, 1939.