[Civil No. 4529.   Filed November 6, 1944.]

[153 Pac. (2d) 158.]

BETTY MORGAN DAVEY, as Administratrix of the Estate of JACK C. DAVEY, Deceased, Appellant and Cross-Appellee, v. HAROLD J. JANSON, Appellee and Cross-Appellant.

Mr. Thomas W. Glenn and Mr. J. B. Sumter, for Appellant and Cross-Appellee.

Messrs. Cox & Ollerton, and Mr. Frank Hotchkiss, for Appellee and Cross-Appellant.

STANFORD, J.—Jack C. Davey died in Maricopa County, Arizona, on November 24, 1940. Plaintiff, now the appellee, brought his action against the personal representative of the estate of deceased to recover $3,175 for legal services rendered deceased in his business affairs and for services rendered the Wallapai Brick Company in its business affairs, extending over the period of time from December 15, 1933, to and including the eleventh month of the year 1940.

The case was heard before the court without a jury, and the appellee recovered judgment in the sum of $800. Appellant herein has appealed from such judgment and the appellee has cross-appealed, claiming he should have judgment for the full amount of his claim.

Letters of administration were issued to the defendant on December 11, 1940. Notice to creditors was first published on December 13, 1940, and the time therein fixed for persons having claims against the estate to exhibit them, with the necessary vouchers, was ten months after the first publication, the estate exceeding in value the sum of $5,000. Section 38–1001, Arizona Code Annotated 1939.

All claims arising upon contracts must be presented within the time limited in the notice to creditors, and if not so presented are forever barred. Section 38–1003, Id.

Claims must be allowed or rejected within ten days after their presentation. Section 38–1005, Id.

If rejected, action by the holder must be brought within three months after rejection if then due, or two months after claim becomes due, or the claim "shall be forever barred." Section 38–1007, Id.

Complaint was filed on July 9, 1941. The first question is, was it filed within three months after appellee's claim against the estate was rejected. The evidence on that point is very contradictory. That of the administratrix is to the effect that she was served with the original of the claim on March 22, 1941. This is corroborated by her attorney and his stenographer. If it was served on that date, by operation of law it was rejected ten days thereafter, or on March 31. To come within the law, the action should thereafter have been filed on June 30, 1941, but the testimony on behalf of appellee is to the effect that he served his claim on the administratrix on April 12, 1941, and not before, and this testimony is corroborated. The court decided the controverted question in favor of appellee.

This finding of fact was based on conflicting evidence and under our many rulings we will not disturb that finding.

Of the total amount of this action the trial court allowed certain claims aggregating $800 and those claims were itemized in the creditor's claim that was presented to the administratrix upon which this suit was brought.

The items recognized by the trial court were as follows:

(1) A case in the Superior Court of Maricopa County entitled Beck v. Wallapai Brick Company. The creditor's claim filed mentioned the fact that the action was still pending and claimed there is a balance of $300 due as attorney's fee.

(2) Item for $125 for a cause of action filed in the Superior Court of Maricopa County, entitled Niagara Fire Insurance Company v. Wallapai Brick Company marked "still pending."

(3) Item for $125 for a case in the same court, entitled Goldwaters' Mercantile Company v. Jack C. Davey.

(4) Item for $50 for services rendered for an action in said court entitled Davey v. Ackers, marked "still pending."

(5) Item for $50 in an action in said court entitled Davey v. Wheat marked "still pending."

(6) Item for services for conference with deceased in the sum of $25, in July and August, 1938.

(7) And the last item was for writing the minute entries of the Wallapai Brick Company and acting as statutory agent to 1940 at $25 per year from 1932, the item being for $125.

The appellant further contends : (1) That the claim as presented was not the same claim upon which suit was brought. (2) That in reference to items of the claim numbered 1, 2 and 7 the claim is based upon a promise of deceased to pay the debt of the Wallapai Brick Company and is not in writing, therefore appellant invokes the defense of the statute of frauds. (3) Appellant pleads the statute of limitation as to items 4 and 5 in the claim as allowed by the trial court and as above set forth. (4) Appellant claims the item for services as statutory agent of the Wallapai Brick Company is barred by the statute of limitation. (5) Error is complained of by the trial court allowing appellee to testify to his agreement with deceased dur-

ing his lifetime. (6) That the appellee failed to prove a *prima facie* case as to any one of the above named items.

In reference to the contention that this action was brought on grounds not set forth in the creditor's claim, or in other words, that the special oral agreement plead in the amended complaint was not made known to appellant through the claim presented, appellant cites many cases, among them being, *Estate of Sullenberger, 1887,* 72 Cal. 549, 14 Pac. 513; *Lichtenberg* v. *McGlynn, 1894,* 105 Cal. 45, 38 Pac. 541; *Barthe* v. *Rogers, 1899,* 127 Cal. 52, 59 Pac. 310; *McGrath* v. *Carroll, 1895,* 110 Cal. 79, 42 Pac. 466; *Etchas* v. *Orena, 1900,* 127 Cal. 588, 60 Pac. 45; *Brooks.* v. *Lawson, 1902,* 136 Cal. 10, 68 Pac. 97; *Morehouse* v. *Morehouse, 1903,* 140 Cal. 88, 73 Pac. 738.

As set forth in our case, *In re Nolan's Estate,* 56 Ariz. 366, 108 Pac. (2d) 391, 394, our court said, as it often has, that: "Our probate law is taken from California and we have frequently followed the courts of that state in its construction. . . . "

From the case of *Syler* v. *Katzer,* 12 Cal. (2d) 348, 84 Pac. (2d) 137, 119 A. L. R. 422, we quote:

"The contention is then, that the claim was insufficient in form, and reliance is placed on such cases as *Etchas* v. *Orena,* 127 Cal. 588, 60 Pac. 45, and *Estate of Steuer,* 77 Cal. App. 584, 247 Pac. 211. Without discussing these in detail, it may be said that there is no necessity that a creditor's claim be drafted with precision and completeness of a pleading. The only requirement is that it state such facts as will apprise the executor or administrator of the amount of the demand. See *Standiford* v. *Cantrell,* 87 Cal. App. 736, 262 Pac. 800; *United States Gypsum Co.* v. *Shaffer,* 7 Cal. (2d) 454, 60 Pac. (2d) 998. . . . "

A case very much in point and where the reasoning is sound is *Sellai* v. *Lemmon* (Nev.), 151 Pac. (2d) 95, 96, from which we quote:

"But defendant contends that the cause of action for the balance claimed to be due on the contract, is different from the claim filed in the estate proceedings. A number of authorities are presented in the brief in support of this contention. We have examined them and have no quarrel with them. They simply do not fit the case at bar. They go to the well-established rule that a suit cannot be maintained upon a claim required to be filed in probate unless it has been so filed within the time prescribed by statute. But here there has been a claim duly filed and rejected, and on which the action is brought. The contention that there is a material difference between the claim and the cause of action set out in the amended complaint, is due to a mistaken notion that the former must be detailed with the same particularity required in pleading a cause of action upon it. The law is based upon reason and it would be unreasonable to require a claimant to seek the services of an attorney in preparing a claim against an estate with the attendant inconvenience and expense, or take the risk of losing a just claim. A claim need not stand the test of a pleading. *Kirman* v. *Powning*, 25 Nev. 378, 60 Pac. 834, 837, 61 Pac. 1090.''

From the cases we have read we feel that the claim as presented by the appellee was sufficient because the details were covered in the amended complaint.

The theory presented in the next contention is that Janson cannot recover upon his 1, 2 and 7 items for which he received his judgment from the trial court because he failed to prove any agreement or memorandum thereof in writing signed by decedent as required by Sec. 58–101, Arizona Code Annotated 1939, having reference to the statutes of fraud.

Appellant cites the case of *Richardson Press* v. *Albright*, 224 N. Y. 497, 121 N. E. 362, 8 A. L. R. 1195. In this case the defendant in the action agreed with the plaintiff that he would pay $1,500 in three equal parts. Prior to that agreement the defendant had an-

swered a letter from the plaintiff in reference to the obligation that the company that owed plaintiff, that he, the defendant, had nothing to do with the direct management of the company; that he expects to be the manager and he would be glad to make arrangements for the payment of the amount due and for future services. In the instant case, according to testimony which the trial court evidently took into consideration as to the items allowed, the appellee herein was employed personally to represent the deceased Davey, and the trial court properly allowed the items. We do not think that this comes within the statutes of fraud.

By the next contention appellant raises the question of statute of limitations as to items 4 and 5, *supra,* as allowed by the trial court. These two cases were filed in 1935, but in each instance after entering default the appellee took no further action. Both of the actions were marked in the creditor's claim "still pending." The action herein was filed in the Superior Court in July, 1941. Also item No. 3 hereinbefore mentioned, known as the "Goldwater claim" and allowed by the trial court, was no doubt allowed on the evidence of the appellee wherein he, in part, testified: "Anyhow, he never responded and the case just wore itself out. I have a stipulation to dismiss it." Most all of these items that have been allowed by the trial court were marked "still pending" except the Goldwater claim just mentioned, and the last item for serving as statutory agent, which, itself, would indicate that it is still pending, and the trial court in respect to the aggregate amount of these claims of $800, stated, "The court is of the opinion that the statute of limitations begins to run as to each of the separate items except the last item mentioned in the claim, when the respective suits were terminated and the respective services completed." We take the fore-

going from the memorandum opinion by the trial court which in a way serves as the findings of fact.

■ Also it is claimed that the trial court should not have allowed the appellee to testify to the special conditional oral agreements alleged in the complaint and that it was in violation of Sec. 23–105, Arizona Code Annotated 1939, which reads as follows:

*"Limitations to testimony in actions by or against personal representatives.*—In an action by or against executors, administrators or guardians, in which judgment may be rendered, for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party or required to testify thereto by the court, and the provisions of this section shall extend to and include all actions by or against the heirs, devisees and legatees or legal representatives of a decedent arising out of any transaction with such decedent."

Appellant timely objected to the testimony given by the appellee, but the court practically throughout the trial of the case overruled the objections, so evidently the court in its discretion overruled the objections and had a right to do it under the above quoted section. And it was equivalent to requiring the appellee to testify as held in our case of *Costello* v. *Gleeson,* 15 Ariz. 280, 138 Pac. 544.

This contention of the appellant is one of the most important of those raised, but we see no abuse of the discretion of the court in allowing the evidence of the appellee.

In respect to the cross-complaint, being unable to uphold the theory of the cross-appellant as to the existence of the agreement between Janson and Davey that the time of payment of his claims would be upon the liquidation of the Fitzsimmons mortgage of May 9, 1939, we cannot find for the cross-appellant, as we

hold the findings set forth in the memorandum opinion of the trial court relative to statute of limitations apply as to the items of the cross-complaint.

The judgment of the lower court is accordingly affirmed.

McALISTER, Chief Justice (specially concurring).

I concur in the opinion of Justice STANFORD that the trial court's order awarding plaintiff $800 of the $3,175 he asked for should be affirmed.

However, it is also my view that the cross-appeal of appellee, seeking the $2,375 additional, should be allowed as well.

The claim filed with the administratrix by appellee contained all the causes in which legal services were rendered by him for Davey and the amount due in each one, the total being $3,175.

This, according to *Syler* v. *Katzer,* 12 Cal. (2d) 348, 84 Pac. (2d) 137, 119 A. L. R. 422, cited by Justice Stanford, is all that is required. In considering the sufficiency of the claim in that case the court said: *"The only requirement is that it state such facts as will apprise the executor or administrator of the amount of the demand."* As filed with the administratrix, the claim did this and, therefore, was the same claim that the action was based on. Because the complaint states the facts necessary for a complaint more in detail than is found in the claim does not mean that the claim is not sufficient and is not the one on which the action is based. The complaint merely gives the additional fact that the different items of appellee's account became due and would be paid by Davey when he should be able to secure the interest of Mrs. Fitzsimmons in the Wallapai Brick Company, and this happened on May 9, 1939. Hence, the limitation did not begin to run until this date, and no one of the items was barred when suit was instituted.

In *Syler* v. *Katzer, supra,* the court said, "it may be said that there is no necessity that a creditor's claim be drafted with precision and completeness of .a pleading." And in *Sellai* v. *Lemmon* (Nev.), 151 Pac. (2d) 95, 96, the court said:

"The contention that there is a material difference between the claim and the cause of action set out in the amended complaint, is due to a mistaken notion that the former must be detailed with the same particularity required in pleading a cause of action upon it. The law is based upon reason and it would be unreasonable to require a claimant to seek the services of an attorney in preparing a claim against an estate with the attendant inconvenience and expense, or take the risk of losing a just claim. A claim need not stand the test of a pleading."

In both these cases the courts of California and Nevada remarked that a claim does not have to state the facts with the precision of a complaint and it is plain that this is true. To repeat the language of the Nevada court, "The law is based upon reason and it would be unreasonable to require a claimant to seek the services of an attorney in preparing a claim against an estate with the attendant inconvenience and expense, or take the risk of losing a just claim." This rule of law evidently grew out of the fact that most of the people who have claims against estates are ordinary folks and it would not be fair to them to require them to procure the services of an attorney to file a claim. The fact that in this case the claimant is an attorney makes no difference, the rule is founded upon the fact that most people who file claims are not lawyers.

I think appellee is entitled to all he asked for, $3,175.

ROSS, Judge (dissenting).

Jack C. Davey died in Maricopa County, Arizona, on November 24, 1940. Plaintiff brought this action against his personal representative to recover $3,175 for legal services rendered deceased in his business affairs, and for services rendered the Wallapai Brick Company in its business affairs, extending over the period of time from December 15, 1933, to and including the eleventh month of the year 1940.

The only witness to testify as to the services sued for, and the contract under which they were rendered, is plaintiff. The client being dead, his lips are closed. The survivor is the only living witness, and upon his testimony alone the judgment against the estate rests.

Under section 23–105, Arizona Code Annotated 1939, plaintiff was incompetent to testify as to any statement or transaction with the deceased unless called by the executrix or required to testify thereto by the court. The plaintiff was not called as a witness by the executrix nor by the court. He offered himself, and over the objections of the defendant that the testimony was incompetent was permitted to testify. If the ruling was equivalent to "requiring" the plaintiff to testify, still I say it was an abuse of a sound discretion, which is the discretion the judge may exercise.

Discussing a statute of the same meaning as our section 23–105, *supra,* the Supreme Court of Montana, in *Wunderlich* v. *Holt,* 86 Mont. 260, 283 Pac. 423, 425, said:

"While the power to admit or reject such testimony rests in the discretion of the trial court, it should be admitted only when, under all the facts and circumstances, it appears to the court that injustice will be done if the testimony is excluded. As was pertinently stated by Mr. Chief Justice Callaway, speaking for the court in *Marcellus* v. *Wright,* 65 Mont. 580, 212.

Pac. 299, 302: 'When should a court determine to admit the testimony of the survivor against one whose "mouth is stopt with dust"? Manifestly only when it appears to the court that, in view of all the surrounding facts and circumstances, injustice will result if the testimony is excluded. While undoubtedly the power to admit and reject such testimony is reposed wisely in the sound discretion of the trial court, it cannot be too careful in exercising that discretion. Every judge has observed the freedom with which a witness testifies who knows he cannot be contradicted. Courts should scrutinize with more than usual care the quality of proof presented in such cases, and when the testimony relates to oral communications between the witness and the deceased, it must be viewed with caution.' "

If there were any evidence corroborating that of plaintiff, there would be some reason for allowing him to testify.

The claim as presented to the administratrix for allowance covers a period of seven years, lacking one month and a few days, and is for legal services rendered Davey as an individual and for legal services rendered the Wallapai Brick Company, a separate entity. The claim does not show why Davey's estate should pay the Brick Company's debts. It shows most of the work was for the Brick Company, a going concern, and the charges for such work were against Davey, or his estate, without any explanation. The claim as presented to the administratrix for allowance is in the form of an open account, and most of the items thereof are identified as accruing from time to time in actions either prosecuted or defended in the superior court of Maricopa County, in which the Brick Company or Davey was a party.

The items allowed, according to the majority opinions, were the following:

In the Beck v. Wallapai Brick Company case, the account recites "upon the successful conclusion of this

case, the Wallapai Brick Company obligates itself to pay $500 as attorney fees; paid on account July, 1929, $200; balance $300." This item accrued in 1929, and was of course outlawed by the three-year statute long before the action was brought. Sec. 29–203, Arizona Code Annotated 1939.

Niagara Fire Ins. Co. v. Wallapai Brick Company case was dismissed with prejudice March 19, 1930, and on that date the Brick Company was charged with a fee of $125. Clearly that was also outlawed. Id.

Goldwaters Merc. Co. v. Davey was dismissed, according to the creditor's account, on December 15, 1933, and on that date Davey was charged with a fee of $125, which was clearly outlawed. Id.

The Davey v. Akers case, an item of $50 attorney fee accrued, according to the creditor's account, August 16, 1935, more than three years before the claim was presented for payment. Id.

The item of $50 in the Davey v. Wheat case accrued, according to creditor's account, December 20, 1935. Id.

The item for writing minutes of the Brick Company and acting as statutory agent from 1932 to 1940, at $25 per year, "$125" extends over a period of eight years. Most of it of course was barred by statute of limitations when presented for payment.

It will be noticed the court, in its opinion, names the cases in which plaintiff's claim for fee was allowed, but in none of such cases, except No. 6, is the date when services were supposed to have been rendered given. The court does take notice that the drafter of the account appended to three of the items the legend "still pending," but there was no evidence that they were pending or should be pending.

It is too apparent that the plaintiff abandoned any idea of collecting on the creditor's claim as presented to the administratrix, and therefore brought his ac-

tion upon the special agreements alleged in his complaint.

Plaintiff's complaint set out such account in *haec verba,* showing charges and credits and then alleges as follows:

"That thereafter, and on or about November 7, 1934, on or about April 1, 1935, on or about April 23, 1936, and on or about July 30, 1938, in onsideration of a special agreement whereby the plaintiff deferred suit upon the various items of said claim, the decedent, Jack C. Davey, promised to the plaintiff that he would pay such indebtedness as soon as he, Jack C. Davey, was able, and that he, the said Jack C. Davey, would be able to pay for said services when he had acquired and fully paid for the interest of Dorothy J. Fitzsimmons in the Wallapai Brick Company, a corporation, . . . ; it was further stipulated and agreed between the parties that no item of said account would become due and payable until such time as all pending business should be concluded between Harold J. Janson, the plaintiff, and Jack C. Davey, deceased."

According to an allegation of plaintiff's complaint the Fitzsimmons account was liquidated and paid off on or about May 9, 1939.

The law positively requires one having a claim against an estate of a deceased person to present the same to the personal representative made out with "necessary vouchers" for allowance before any action may be maintained thereon against the administratrix. The claim here presented for allowance, without the aid of the allegations of the complaint, was nothing but an assemblage of figures and words, but when considered in connection with the allegation just stated may well be regarded as a consideration for the "special agreements" pleaded by plaintiff, in which he states he deferred action on the promise by decedent that "he would pay such indebtedness as

soon as he was able," or when he acquired the Fitzsimmons interest in the Wallapai Brick Company. In other words, the mutual agreement pleaded by plaintiff in his complaint was in lieu of the creditor's account and unassailable by either party to it, except for fraud or mistake. The agreement pleaded was not presented to the administratrix for allowance.

There may be some difference of opinion among the courts as to what a creditor's claim should state. *Syler* v. *Katzer,* 12 Cal. (2d) 348, 84 Pac. (2d) 137, 119 A. L. R. 422. But there is none that allows a creditor to maintain an action on his claim before it is presented for allowance and rejected by the personal representative or by operation of law, where the law makes such presentation necessary.

" . . . Neither the court nor the administratrix can waive the statutory requirements by permitting the filing of a claim after it has become barred for failure to present it, nor an amendment of a claim presented after the lapse of the statutory time for presenting claims by setting up a contract different from the one on which it was originally based. It would amount to giving recognition to the filing of a new claim after time, which cannot be allowed under the circumstances presented in this case. The administratrix has no power to waive these mandatory provisions of the statute, nor may the court authorize her to do so. (Citing case.) A condition precedent to recovery on a claim presented to the administratrix, and by her rejected, is that it must be based on the claim as presented, and cannot give support to any other cause of action. (Citing cases.) To permit the plaintiff to come in with another amendment of its claim with a different contract after the lapse of the statutory period is, in our opinion, beyond the jurisdiction of the court." *State ex rel. Paramount Publix Corp.* v. *District Court of Seventh Judicial Dist. etc.,* 90 Mont. 281, 1 Pac. (2d) 335, 337, 76 A. L. R. 1371.

And in *Stockton Sav. Bank* v. *McCown*, 170 ·Cal. 600, 150 Pac. 985, 987, the court said:

"The administrator had the right to reject the claim as presented. Thereupon the claimant's cause of action arose upon the claim in the form in which it had been presented. That was the only action which he might maintain. There was here a fatal variance· between the claim presented and the claim upon which suit ,was brought. (Citing case)."

A good reason why plaintiff should not recover is that his claim against the estate, as filed and rejected, did not disclose that it was based upon special agreements acknowledging its justness and that it was owing, but on an open account. If the decedent, as contended in plaintiff's complaint, made. such agreements and the claim against the estate so showed, then the administratrix would·have been given an opportunity to investigate the claim, and if she found her intestate in fact had made the special promises alleged in the complaint she doubtless would have approved the claim and paid it in due course. But plaintiff's claim, as presented, did not inform the administratrix of such special agreements by her intestate, if any there were, and she had no opportunity to·investigate the truth or falsity of such claim.

We observe that under the facts and the "special agreement" pleaded by plaintiff he could have brought his action against Davey on such agreement any time after May 9, 1939, and before Davey's death on November 24, 1940, a period of one year, six months and fifteen days. The reason for plaintiff's nonaction during that period to collect this overdue claim is not satisfactorily accounted for nor explained by plaintiff. There is no suggestion that Davey did not have or possess means to pay his debts while he lived, nor why he was not sued for this alleged debt when he could appear and defend in his own person

and by attorney. This claim is not only pretty good evidence of his solvency during his lifetime, but also the solvency of his estate.

The judgment of the trial court should be reversed.