[Civ. No. 15209. Second Dist., Div. One. July 24, 1946.]

MARGARET GRAY BURNS, Respondent, v. HERSCHEL McGRAW, Appellant.

Harry J. McClean and L. J. Styskal for Appellant.

Charles E. Taintor and Allport & Allport for Respondent.

DORAN, J.—This is an action seeking declaratory relief, involving the construction of a written lease of real property known as the "Ivar House" restaurant, etc., located at 1737 Ivar Street in Hollywood, California. The controversy arose out of the death of the lessee, Orsina Gray Thompson, and her will which bequeathed said lease to an adopted daughter, Margaret Gray Burns, the respondent. The facts, which are not in dispute, may be summarized as follows: On April 4, 1941, after a previous lease and tenancy for some years between the same parties, the lease under discussion was executed between the owners, T. T. Perry, et al., and the testatrix Orsina Gray Thompson, covering a 10-year period ending on April 30, 1951, at a total rental of $35,700 payable in monthly installments of $300. The lessee occupied the prem-

ises and operated the "Ivar House" until May 24, 1943, and on that date died, leaving the will in question, which was duly admitted to probate on June 17, 1943, one Ella Rae Briggs being then appointed executrix. The executrix took possession of the premises, operating the business and paying the rent, $300 per month, up to and including the rent for January, 1945, without objection on the part of the owners. On January 17, 1945, the appellant, Herschel McGraw, purchased the real estate from the Perrys, and in the escrow appellant was apportioned and accepted $140 of the January rent. Checks for the February and March rent were sent by the executrix and were held by appellant until March 6, 1945, at which time the executrix gave to appellant a writing which stated that "Neither your cashing of the check for $300.00 which I have heretofore given you in payment of rent . . . nor your acceptance of any rent of said property which I shall hereafter pay you, shall be construed, as far as I, as executrix, am concerned, as a waiver." Thereupon appellant cashed the rent checks for February and March and later accepted rent for April and May.

On March 2, 1945, the executrix filed a petition for partial distribution, asking that the Ivar House business and lease be distributed to the respondent, legatee named in the will. The appellant, as successor to the lessors, filed objections to the distribution on the ground that no consent had been given "to such bequest or any transfer, assignment or conveyance of said lease or to the distribution thereof in the manner prayed for." Such distribution was alleged to constitute a breach of the lease provisions against assignment. The petition for distribution then went off calendar and has not been heard, the present action for declaratory relief being thereafter commenced.

The pertinent provisions of the lease, are as follows:

"12. Lessee shall not assign this lease, or any interest therein, . . . without the written consent of lessor first had and obtained, and a consent to one assignment . . . shall not be deemed a consent to any subsequent assignment . . . Any such assignment . . . without such consent shall be void, and shall, at the option of lessor, terminate this lease. This lease shall not, . . . be assignable as to the interest of Lessee, by operation of law, without the written consent of lessor."

"13. Either (a) the appointment of a receiver . . ., or (b) a general assignment by lessee for the benefit of creditors,

or (c) any action taken or suffered by lessee under any insolvency or bankruptcy act shall . . . constitute a breach of this lease by lessee.''

''21. The covenants and conditions herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of all of the parties hereto; and all of the parties hereto shall be jointly and severally liable hereunder.''

The will of Orsina Gray Thompson contained the following provision:

''I do not own the fee title to the real estate, but have been operating said business for a long period of time on a lease. I hereby give, devise and bequeath said lease, together with all furniture, furnishings, equipment and stock on hand to my daughter, Margaret Gray'' (Burns).

As set forth in the Findings of Fact, the controversy herein relates to the question, ''Is the consent of the defendant necessary, under the provisions of said lease, to a valid devolution of said lease from Orsina Gray Thompson, through said bequest in her will, to her daughter, Margaret Gray Burns?'', or stated otherwise, ''Will a distribution of said lease, under said bequest, as one of the assets of said business, to the plaintiff, Margaret Gray Burns, without the consent of the defendant, Herschel McGraw, constitute a breach of said lease entitling said defendant to terminate same and declare said lease forfeited and repossess the premises?'' The trial court determined that the distribution of the lease to the plaintiff, under the bequest in the lessee's will, without the present lessor's consent, ''will not constitute a breach of said lease entitling defendant to declare said lease forfeited,'' and that the defendant's consent ''is not necessary to a valid devolution of said lease from Orsina Gray Thompson, Deceased, through the bequest thereof . . . to her daughter, Margaret Gray Burns.''

It should be noted at the outset of this discussion, that the appellant does not contend that the death of the lessee terminated the lease. The appellant's brief also concedes that ''The devolution of the lease to the Executrix having occurred by operation of law, was not a breach of the covenant in the lease against assignment.'' The brief further states that, ''Appellant's contention, applied to the circumstances of the case, leaves the lease in the possession of the Executrix by operation of law, for the benefit of the heirs of the decedent

lessee, who may be entitled thereto." The only point presented, therefore, is that "Any attempt by the Executrix to convey or transfer the lease pursuant to the purported bequest . . . would be a breach and would entitle the lessor, Appellant herein, to terminate the lease." Although the decisions in this and other jurisdictions are not numerous, they leave little doubt that under the circumstances here presented the present owner and lessor is not entitled to claim a forfeiture of the lease.

There are three California cases dealing generally with the present subject, and cited by both parties to this appeal. The first of these is *Southern Pacific Co.* v. *Swanson,* 73 Cal.App. 229 [238 P. 736], in which it was held that a lease to defendant's husband, the term of which extended some six months after the lessee's death, did not terminate upon death, and the lessee's estate "became liable for the payment of the rent for the remainder of the term of the lease, to be collected as any other claim against it. (*Sheppard* v. *Tyler,* 92 Cal. 552 [28 P. 601].) The estate's liability arises out of privity of contract, based upon the lease. . . ." In *Stratford Co.* v. *Continental Mtg. Co.,* 74 Cal.App. 551, 554 [241 P. 429], the appealing landlord insisted, as does the present appellant, upon the forfeiture of a lease forbidding assignment without consent of the lessor. In the Stratford case the lease also provided for a forfeiture "in the event that any person other than the lessee named herein, shall secure possession of the interest of the lessee hereunder, under execution, . . . receivership or proceeding in bankruptcy, or other operation of law, or otherwise." The lessee's administratrix, during the ordinary course of administration, sold and assigned the leasehold interest without the lessor's consent, and the purchaser thereof went into possession. Affirming the decision below, the appellate court held that such sale and assignment did not work a forfeiture of the lease. In this connection, the court said: "We have paid due regard to the rules of law that where there is a claim made that a forfeiture of rights under a written instrument has occurred, the burden is upon the party making the point 'to show that such was the unmistakable intention of the instrument' (*Quatman* v. *McCray,* 128 Cal. 285 [60 P. 855]); and that the courts tenaciously cling 'to the rule that forfeitures of estates and restraints upon alienation should not be enforced except when the terms of the conditions are so plain as to be beyond the province of

construction' (*Randol* v. *Scott*, 110 Cal. 590 [42 P. 976]. See, also, *Jameson* v. *Chanslor-Canfield Oil Co.*, 176 Cal. 1 [167 P. 369] citing Civ. Code, sec. 1442.'' The code section just mentioned, provides that ''A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.'' In the Stratford case, a hearing in the Supreme Court was denied. A third California case is *Joost* v. *Castel*, 33 Cal.App.2d 138 [91 P.2d 172], where the court held that the lessee's death did not terminate a lease, that an ordinary covenant against assignment does not bind the tenant's executors, and that the lessee's estate was liable for rent for the unexpired term of the lease. The Stratford case is cited with approval.

Appellant's brief concedes that another case, *Squire* v. *Learned*, 196 Mass. 134 [81 N.E. 880, 124 Am.St.Rep. 525, 12 Ann.Cas. 997, 11 L.R.A.N.S. 634], ''has been extensively cited as an authority contrary to the contention of this appellant.'' The Massachusetts court there held that a bequest of the lease term, in trust, did not constitute a breach of a covenant not to assign the lease. The language of this decision seems particularly applicable to the instant case: ''The question in all cases is a question of construction. The reason why the bequest to an executor is not a breach of the lessee's covenant not to assign is that from the insertion of that covenant (a general covenant not to assign) in a lease for a specified term of years the court cannot impute to the parties to the demise an intention to permit the leasehold interest to go to the administrator and to prevent the lessee from making a will and disposing of his property, including the leasehold interest in question. If it had been the intention of the parties to bring the leasehold interest to an end on the lessee's death, a provision to that effect could have been inserted. So if it had been their intention to provide that the leasehold interest should not pass by will although it could vest in an administrator, a clause to that effect could have been adopted. . . . In the absence of such or similar specific provisions *the insertion of a general covenant not to assign ought not in our opinion to be construed to prevent the transmission of the leasehold interest either to an administrator or to an executor or legatee.*'' (Italics added.) To the same effect is the case of *Francis* v. *Ferguson*, 246 N.Y. 516 [159 N.E. 416, 55 A.L.R. 982], where the court cited with approval the Massachusetts case of *Squire* v. *Learned* just

mentioned. The Francis case held that in order to prevent the executors from disposing of a lease, "general language" against assignment is not sufficient; the prohibitory language of the lease must be "very special."

Appellant, seeking to distinguish the present case from the cited authorities, argues that the lease here under consideration contains "very special" language which should prohibit respondent from taking the lease bequeathed in the will. Appellant then points to the lease provision that "The covenants and conditions herein contained shall, *subject to the provisions as to assignment,* apply to and bind the heirs, successors, executors, administrators and assigns of all the parties hereto." (Appellant's italics.) Far from being "very special" language, however, the instant terminology appears to do nothing more than paraphrase the more or less conventional language found in practically all leases. The Ivar House lease neither provides that the lessee's death shall work a forfeiture at the lessor's option, nor does it stipulate that the lessee shall not bequeath the lease along with the business equipment. Had such or similar phraseology been employed, doubtless it would constitute "very special" language which would prohibit any possible devolution of the lease without the lessor's consent. But such language is not there, and cannot by judicial construction or otherwise, be read into the written instrument.

█ The provision quoted above, to the effect that the lease should be binding upon the "heirs, successors," etc., would reasonably seem to indicate an intent on the part of the makers, that the original lessee's successors, whether technically "heirs" or legatees, might, by reason of the lessee's death, be carrying on the Ivar House business. This interpretation is hardly consistent with the idea of forfeiture. █ Moreover, the lease definitely provides that certain designated legal contingencies such as receivership, assignment for benefit of creditors, insolvency and bankruptcy proceedings, shall "constitute a breach of this lease by lessee." In this category there is no mention of probate proceedings. It is therefore not unreasonable to assume, as stated in respondent's brief, that the parties "did not intend to include proceedings in probate administration upon death of the lessee. This appears to be an instance where the maxim *expressio unius est exclusio alterius* is applicable. This is confirmed by the addition of the provision which recognized the rights and possible existence of heirs," etc.

It is urged on behalf of appellant, that the "phenomenon of death" should not be permitted to "deprive the landlord of the right which the courts universally agree he possesses,"—that of protection against unwanted and undesirable tenants. In *De Angeles* v. *Cotta*, 62 Cal.App. 691, 695 [217 P. 821], the court quite properly said: "Everyone has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." However, the De Angeles case did not involve a situation analogous to the present one, nor is it authority for appellant's contention. So far as the "phenomenon of death" is concerned, appellant does not here claim that the lessee's death worked a forfeiture of the lease. Indeed, it is affirmed that the lease is "in the possession of the Executrix by operation of law, *for the benefit of the heirs of the decedent lessee, who may be entitled thereto.*" If this be so, then such "heirs," taking the lease without the lessor's consent, might easily be as undesirable to the lessor as any legatee named in the lessee's will. In either or any case, the lessor desiring such protection against the intrusion of strangers, has only to insert in the lease "very special" language reserving the right to terminate the lease upon a tenant's death, or requiring consent to a bequest of the lease.

The respondent's brief comments on the fact that the appellant "assumes that title to the lessee's interest under said lease devolved first to the executrix by operation of law," which transfer appellant does not object to; "and subsequently from the executrix by an express transfer to the legatee," to which latter transaction the appellant takes exception. This theory of a double transfer during the course of administration is, however, hardly tenable in view of section 300 of the Probate Code which provides that "When a person dies, the title to his property, real and personal, passes to the person to whom it is devised or bequeathed . . . subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, sale or other disposition. . . ." The legatee, therefore, does not obtain title from the executor, but directly by virtue of the will provision, such title being ultimately evidenced by the court's order of distribution. The executor is, in fact, merely an administrative officer charged with carrying out the testator's expressed wishes under supervision of the court.

In the instant case the declaratory judgment of the trial court appears to reflect the law as laid down in the cited cases. And as said in *Estate of Boyd*, 24 Cal.App.2d 287, 290 [74 P.2d 1049], "When the construction given an instrument . . . appears to be reasonable and consistent with the intent of a party, appellate courts will not substitute another interpretation though it seems equally tenable."

The judgment is therefore affirmed.

York, P. J., and White, J., concurred.