[Civ. No. 22656. Second Dist., Div. One. Feb. 24, 1958.]

J. VANCE HORNING, as Special Administrator, etc., Respondent, v. THORNTON LADD, Appellant.

G. Harold Janeway, W. I. Titus and Frank M. Gunter for Appellant.

McCutchen, Black, Harnagel & Green, George Harnagel, Jr., Frederick J. Kling and Jack T. Swafford for Respondent.

WHITE, P. J.—Defendant appeals from the judgment that the contract between Theron E. Horning, deceased, and himself, dated October 31, 1951, "is still in force and effect and was not terminated by the death of Theron E. Horning, deceased, and that plaintiff, as special administrator of decedent, is entitled to possession of the premises described in said contract, and upon performance of the obligations of said contract is entitled to all the rights and privileges thereunder."

By the pleadings of the parties the court was asked to declare their respective rights under the agreement of October 31, 1951, defendant seller contending that plaintiff's only right under said agreement is "to receive from this defendant upon entry of such judgment the repayment of all amounts paid to and received by this defendant on the principal of the purchase price provided by the terms of said agreement," and plaintiff maintaining that said agreement "is in full force and effect; that plaintiff is an equitable owner of said land, and upon completing said payments will have the legal title."

The court found that by said written contract of October 31, 1951, the "decedent agreed to buy and the defendant agreed to sell certain real property . . ."; that the agreement was fully performed by both parties until decedent's death; that thereafter decedent's special administrator (plaintiff herein) "has tendered timely and full performance of all the obligations imposed upon the decedent"; and that defendant refused to accept said tender.

It was then concluded "that the contract between the parties is unambiguous"; that it "was not personal in nature" and was not terminated by decedent's death; "that the decedent's rights under the contract passed at his death to plaintiff as special administrator of his estate, and that plaintiff is entitled to all of the rights of the decedent under said contract"; and that plaintiff "is entitled to possession of the premises, and upon performance of the obligations of said contract is entitled to all of the rights and privileges thereunder."

There is no controversy over the facts. The written contract provides that seller agrees to sell and buyer agrees to buy certain real property; that buyer agrees to pay $15,000 at the rate of $75 per month commencing June 1, 1951, together with interest thereon at the rate of 5 per cent

per annum, "which said $75 monthly payment, or any multiple thereof, shall first be applied upon interest . . . and the remainder of said payment to the principal thereof"; the buyer agrees to pay taxes, assessments, insurance and utilities; to keep the place free of liens "resulting from any act or failure to act of the buyer"; to keep the premises "in a first class condition of repair" and "in a neat and orderly condition"; that when one-third of the principal amount has been paid buyer may execute his promissory note for the unpaid balance secured by a deed of trust and seller will execute a deed to "buyer or his nominee" upon the same terms of payment. Buyer agreed "to use the premises only as a private dwelling." Said contract also contains the following paragraphs:

"It is specifically agreed between the parties hereto that this contract cannot be sold, assigned or transferred by the Buyer, nor by operation of law. Under no circumstances shall this contract, or any facsimile thereof, be made a matter of public record.

"It is further specifically understood and agreed between the parties that at no time during the life of this contract will the Buyer rent or sublet the house upon the described premises to any other person or persons, without the written consent of Seller having been first obtained."

It is also provided that, in the event of Buyer's default, all moneys theretofore paid by him "shall be retained by the seller as rent for the use and occupancy of the said premises up to the date of default."

And seller further agrees:

"(1) That should the Buyer wish to terminate the contract, he may do so by notifying the Seller, in writing, of his desires ten days prior to date on which default would occur.

"(2) That he will pay to the Buyer a sum equal to the amount paid by the Buyer on the principal sum of $15,000.00 (fifteen thousand) at the time of termination of the contract.

"Time is the essence of this agreement and this agreement shall be binding upon the executors, administrators, heirs and assigns of the parties hereto, except as hereinbefore limited."

The buyer never tendered to the seller his note and trust deed for the unpaid balance of principal. Nor did he ever communicate to the seller his wish to terminate the agreement and have the amount of principal paid by him returned

pursuant to the provisions of paragraph (2) hereinabove quoted. After buyer's death, his special administrator, respondent herein, tendered performance of the agreement in all respects. Seller refuses to accept such tenders, offers to pay to the special administrator the amount of principal paid by decedent, and insists that seller has no other obligation.

Respondent cites and relies upon *Burns* v. *McGraw*, 75 Cal.App.2d 481 [171 P.2d 148], an action for declaratory relief involving the construction of a lease of real property used for business. Lessee died leaving a will which bequeathed the lease to her adopted daughter, respondent therein. The successor to the lessor objected to the distribution of the lease to the legatee thereof upon the ground that such distribution would be a breach of the lease provisions against assignment. The petition for distribution then went off calendar and an action for declaratory relief was started. The lease provided that "Lessee shall not assign this lease, or any interest therein, . . . without the written consent of the lessor first had and obtained. . . . This lease shall not, . . . be assignable as to the interest of the Lessee, by operation of law, without the written consent of the Lessor." The only point presented was that the distribution by the executrix pursuant to the purported bequest would be a breach and would entitle the lessor to terminate the lease. This court affirmed the judgment for the legatee, and approved and followed the decisions in *Southern Pac. Co.* v. *Swanson*, 73 Cal.App. 229, 234 [238 P. 736]; *Stratford Co.* v. *Continental Mtg. Co.*, 74 Cal.App. 551, 554 [241 P. 429]; and *Joost* v. *Castel*, 33 Cal.App.2d 138 [91 P.2d 172], to the effect that the lessee's death did not terminate such a lease, did not give to lessor the option to terminate it, or release lessee's estate from liability for rent for the unexpired term of the lease, and that a covenant against assignment contained in a lease does not bind the tenant's executors and is not broken by a transfer by the death of the tenant.

Appellant urges that in the instant action "the only right passing by operation of the law of intestacy to plaintiff, as administrator, was to receive back Horning's payments on the principal of the contract, which refund defendant offers in his answer." Appellant further states that "in the situation here presented no 'forfeiture' is involved or results because plaintiff administrator (by reason of defendant's tender of repayment) will receive the return in full of the

consideration paid by decedent under the contract," as the interest payments represent the "agreed price of the use of the premises by the buyer." Appellant does not indicate what language of the agreement gives to the seller the option to terminate the agreement. Nor does he specify the language of the agreement which gives the respondent "the right to receive back Horning's payments on the principal." We have examined the entire written agreement and, while provision is made that, in the event of buyer's default, seller may retain all moneys (both interest and principal) theretofore paid by buyer, which shall be the agreed value of buyer's use of the premises, and provision is also made, upon notice from the buyer to the seller that the buyer wishes to terminate the agreement, seller will repay to buyer the amount theretofore paid on the principal sum, there is no provision for the return of the principal payments upon buyer's death, or at the option of the seller.

Appellant further urges that because of such claimed provisions under which respondent will receive back everything of value paid by decedent, the instant action is governed by *Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335 [182 P.2d 182], and particularly the language of several paragraphs quoted in appellant's opening brief from page 352 of the dissenting opinion. The Trubowitch case, *supra,* involved an assignment of a contract for the sale of tomato paste. The contract contained no provision against assignment "by operation of law." The assignment was by the corporate buyer to its stockholders upon its dissolution. That decision is in no way helpful to the appellant in the instant action.

■ Whether a writing is ambiguous is a question of law. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133 [48 P.2d 13].) It should be determined from the writing itself. The contract now engaging our attention contains no language, ambiguous or otherwise, respecting its termination upon the death of the buyer. Contracts do not die with the contractor (with a few exceptions not here involved) unless they contain provision to that effect. ■ Contracts will be construed, where possible, to avoid forfeiture. ■ The burden of establishing the right to a forfeiture is upon the one claiming that right. ■ Forfeitures of estates should never be enforced unless the terms of the agreement are so plain as to need no construction. (*O'Morrow* v. *Borad,* 27 Cal.2d 794, 800 [167 P.2d 483, 163 A.L.R. 894].)

We are convinced that the written contract which gave rise to the instant action was not terminated by the death of the buyer.

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.

A petition for a rehearing was denied March 24, 1958, and appellant's petition for a hearing by the Supreme Court was denied April 23, 1958.