[No. A019804. First Dist. Jan. 31, 1985.]

SHARON A. MILLER, as Executrix, etc., Plaintiff and Respondent, v.
SAN FRANCISCO NEWSPAPER AGENCY, Defendant and Appellant.

## COUNSEL

Seyfarth, Shaw, Fairweather & Geraldson, Keith A. Hunsaker, Jr., Raymond R. Kepner, David D. Kadue for Defendant and Appellant.

Johnston, Miller & Giannini and Glenn E. Miller for Plaintiff and Respondent.

Timothy H. Fine and Patrick J. Carter as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**ANDERSON, J.**\*—Defendant, San Francisco Newspaper Agency (hereafter agency), appeals from an order granting a preliminary injunction prohibiting it from terminating two newspaper distribution contracts entered into with one John Conway, deceased (hereafter Conway or dealer). The action was brought by Conway's daughter, Sharon A. Miller (hereafter Miller), as Executrix of the Conway Estate. Miller, the sole beneficiary under her father's will, claims a 50 percent undivided interest in the distribution contracts, her mother, Marcelle Conway, retaining the other 50 percent undivided interest by virtue of the contracts' community property character. Miller has successfully operated the newspaper distributorships since the time of her father's death.

The agency argues, inter alia, that the trial court abused its discretion in concluding that the dealership contracts survived Conway's death. Pertinent to this argument are two findings contained within the court's "Order re Preliminary Injunction." (1) "The contracts in question . . . are silent with regard to the rights and obligations of the parties in the event of the death of the dealer;" and (2) "It is the Court's opinion that there is substantial reason to believe that the contracts in question here will be held to inure to

---

\*Assigned by the Chairperson of the Judicial Council.

the benefit of the estate and that the contract rights of the dealer were not forfeited upon the death of Mr. Conway."

■ Both of the contracts before the trial court contained the statement, "This Agreement is not assignable nor transferable in whole or in part by Dealer, voluntarily, by operation of law or otherwise." We conclude from the stated findings of the court that it did not consider the phrase "by operation of law" to be dispositive of the issue of whether or not Conway's dealership agreements survived his death. For the following reasons, we disagree and conclude it is.

California courts have long recognized the distinction between voluntary assignment of contract rights by one party and involuntary assignments by operation of law. (*California Packing Corp.* v. *Lopez* (1929) 207 Cal. 600 [279 P. 644, 64 A.L.R. 1412].) In *Lopez,* the court was asked to rule on the survivability of a non-personal services contract containing a clause forbidding assignment " 'without the written consent of the first party.' " (*Id.,* at p. 602.) In ruling that the rights under the contract survived the second party's death the court stated, "[t]he prohibitory clause against assignment . . . forbids only voluntary assignment by the parties; it is not violated by an involuntary assignment by operation of law." (*Id.,* at p. 603.) We conclude from this language that had the contract in question contained a clause specifically prohibiting assignment "by operation of law," the decedent's rights under the contract could not have passed through his estate.

We find additional support for our conclusions in sister jurisdictions where the phrase "by operation of law" has been specifically equated with the passing of title through an estate. In *Burke* v. *Backus* (1892) 51 Minn. 174 [53 N.W. 458, 459], the Minnesota Supreme Court stated, "the term 'by operation of law' refers to cases where the title or right of property vests in a person, not by his own act or agreement, but by the single operation of law, as in the case of the devolution of title upon an administrator, or where the estate of an intestate is cast upon the heir." The United States Supreme Court has held in a similar vein that, "[a]ssignment by operation of law, *as in the case of an executor,* is quite different from assignment by act of the party; and the one might be held to have been in the contemplation of the parties to [a] contract although the other was not." (*Arkansas Smelting Co.* v. *Belden Co.* (1888) 127 U.S. 379, 389-390 [32 L.Ed. 246, 249, 8 S.Ct. 1308], italics added.)

Respondent argues, however, that the "standard boiler plate language contained in [the] dealership contracts . . . has long been held not to apply to death transfers," and cites four California appellate court decisions in support thereof. Respondent's reliance upon these cases is misplaced, how-

ever. While the contracts (or leases) in three of the four cases do contain language prohibiting assignment "by operation of law," there is also more specific language purporting to bind executors, administrators and heirs to the terms of the agreement, thus creating a specific exception. (*Horning* v. *Ladd* (1958) 157 Cal.App.2d 806, 808 [321 P.2d 795]; *Burns* v. *McGraw* (1946) 75 Cal.App.2d 481, 484, 487 [171 P.2d 148]; *Joost* v. *Castel* (1939) 33 Cal.App.2d 138, 140 [91 P.2d 172].) In the remaining case, *Stratford Co.* v. *Continental Mtg. Co.* (1925) 74 Cal.App. 551, 553 [241 P. 429], assignment of a lease was prohibited " 'under execution, or by reason of any receivership or proceeding in bankruptcy, or other operation of law, or otherwise . . . .' " (Italics omitted.) In finding an assignment of that lease by the lessee's executor to be valid, the court did not hold the language, "by operation of law" to be ineffectual, but reasoned that the document's emphasis on circumstances relating to the lessee's potential financial demise and its silence as to the effect of his death left the intent of the parties in question, and so mandated a resolution which favored nonforfeiture. (*Id.*, at pp. 554-555.) To the extent that *Stratford* supports respondent's position, it is inconsistent with the only logical inference to be drawn by our Supreme Court's conclusion in *California Packing Corp.* v. *Lopez, supra,* 207 Cal. 600 two years later.

We therefore find as a matter of law that the antiassignment clauses contained in the dealership agreements did specifically cover the rights of the parties in the event of Conway's death. To hold otherwise would render the term, "by operation of law" here meaningless and would amount to nothing more than judicial rewriting of the contract. We must give force to the intent of the parties as expressed in their *written* words.[1] (*Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [48 P.2d 13]; *Mission Valley East, Inc.* v. *County of Kern* (1981) 120 Cal.App.3d 89, 97 [174 Cal.Rptr. 300], citing 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 522, p. 445.) It was error for the trial court to conclude that Conway's rights under the dealership agreements would likely inure to the benefit of his estate.

In light of our conclusion, it is unnecessary to address the other issues raised by this appeal.

---

[1]We are aware that plaintiff's "First Amended and Supplemental Complaint for Injunctive Relief and Damages," filed approximately eight months after the preliminary injunction issued, suggests that the dealership agreements here in question were adhesion contracts, and did not reflect Conway's understanding of the issue of survivability. Similar allegations can be found in respondent's "Counterstatement of Facts." But this issue was not before the trial court at the time it granted the preliminary injunction, and nothing in its "Order re Preliminary Injunction" suggests that the court considered such an argument in making its decision. We therefore decline to address the matter for the first time on appeal.

The order granting the preliminary injunction is reversed and the preliminary injunction issued pursuant thereto is dissolved.

White, P. J., and Barry-Deal, J., concur.

A petition for a rehearing was denied February 25, 1985. White, P. J., was of the opinion that the petition should be granted.