[No. H000535. Sixth Dist. July 2, 1985.]

SAN FRANCISCO NEWSPAPER PRINTING COMPANY, INC.,
Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
SHARON A. MILLER, as Executrix, etc., Real Party in Interest.

**COUNSEL**

John M. Ross, William J. Dowling and Cooper, White & Cooper for Petitioner.

No appearance for Respondent.

Glenn E. Miller, Johnston, Miller & Giannini, Geoffrey Van Loucks and Van Loucks & Hanley for Real Party in Interest.

**OPINION**

**BRAUER, J.**—Petitioner San Francisco Newspaper Printing Company, Inc. (SFNA) applies for a writ of mandate or prohibition directed to the Superior Court, Santa Clara County to dissolve an injunction pendente lite. SFNA is a defendant in an action brought by Miller as executrix of the estate of John R. Conway. The lawsuit seeks to establish that two identical written newspaper dealership agreements, one for the San Francisco Examiner and one for the San Francisco Chronicle, survived the death of Conway, the dealer.

When this action was first commenced, the superior court granted an injunction pendente lite restraining SFNA from terminating the dealership. Earlier this year, the Court of Appeal for the First District ordered the dissolution of the injunction, holding that the agreement is clear and permits neither the inter vivos assignment of the dealership nor its devolution by will or intestacy. (*Miller* v. *San Francisco Newspaper Agency* (1985) 164

Cal.App.3d 315 [210 Cal.Rptr. 159].) That decision is final and the law of the case.

While the appeal was pending, the superior court permitted the amendment to the complaint in order to set forth claims that 1) SFNA is attempting to restrain trade in violation of the Cartwright Act by illegally allocating territories and 2) the agreement in question is an unlawful contract of adhesion whose attempted enforcement constitutes an unfair business practice in violation of Business and Professions Code section 17200 et seq. The Court of Appeal in *Miller* v. *San Francisco Newspaper Agency, supra,* 164 Cal.App.3d at page 319, took note of the amended complaint but expressly declined to address its allegations.

As soon as the Court of Appeal had denied a rehearing, and even before the remittitur issued, Miller applied to the trial court for a new injunction based on the unfair business practice cause of action. Business and Professions Code section 17203 authorizes such a remedy. In due course, the trial court granted the requested relief, and this petition followed.[1]

■ Miller first questions the propriety of this court's intervention at this juncture, pointing out correctly that an appeal lies from the grant of a pendente lite injunction. (Code Civ. Proc., § 904.1, subd. (f).) But where the remedy by appeal is not speedy and adequate, then in an otherwise proper case mandate may lie. (*Hampton* v. *Superior Court* (1952) 38 Cal.2d 652, 657 [242 P.2d 1].) This case is already over three years old. With that in mind and in the interest of judicial economy, this court may in its discretion grant relief by writ. (*Chambers* v. *Superior Court* (1981) 121 Cal.App.3d 893, 897 [175 Cal.Rptr. 575].)

The petition prays for the issuance of a peremptory writ. We have received and considered opposition and have on our own motion scheduled and heard oral argument. The restrictions laid down in *Palma* v. *U. S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893] have been complied with. We have concluded to issue a peremptory writ in the first instance because the trial court abused its discretion in granting the second injunction.

■ Preliminarily, and without resting our decision on this ground, we point out that there is no sufficient evidentiary basis for the injunction. The allegations in the amended complaint which support an inference that the

---

[1]It is ironic that the injunction perpetuates the very territory allocation scheme which Miller denounces in one of her Cartwright Act causes of action.

contract in question is an adhesive one were all made on information and belief. Such allegations are inadequate, as a matter of law, to establish the facts alleged. (*Bank of America* v. *Williams* (1948) 89 Cal.App.2d 21, 29 [200 P.2d 151].) The declaration of Mr. Conway's widow as to her expectations that the contract was survivable is irrelevant as she is not a party to the agreement. She is not a competent witness as to her late husband's expectations. If he had in his lifetime expressed his expectations, an auditor could perhaps frame a declaration which would pass muster under Evidence Code section 1251, but no such declaration is on file.

■ What we *do* rest our decision on is the principle that an injunction pendente lite must not issue unless it is reasonably probable that the moving party will prevail on the merits (*U. C. Nuclear Weapons Labs Conversion Project* v. *Lawrence Livermore Laboratory* (1984) 154 Cal.App.3d 1157, 1160 [201 Cal.Rptr. 837]; *Bennett* v. *Lew* (1984) 151 Cal.App.3d 1177, 1183 [199 Cal.Rptr. 241]) and our conviction that Miller cannot meet this standard.

■ We start with the fact that the heart has been cut out of Miller's claim: the *meaning* of the agreement is no longer open to question. For purposes of this lawsuit it has been conclusively established that the business run by the deceased Mr. Conway was not subject to transfer during life or by death. Miller's argument in opposition to this petition as to the agreement's ambiguity is totally improper and foreclosed by judgment. The only remaining issue is whether the agreement is enforceable. In what follows, we will assume that the newspaper distribution contract is indeed a contract of adhesion.

But that is just the beginning and not the end of the analysis! (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 357 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].) ■ As pointed out in the leading case of *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165], a contract of adhesion is enforceable unless it is unconscionable or does not fall within the reasonable expectations of the weaker or "adhering" party.

■ There is nothing oppressive about the contract in issue. It does not, for example, compel the dealer to arbitrate disputes before an agent of SFNA acting as umpire. Compare *Graham, supra*. Indeed, Miller does not point to any provisions which she claims to involve overreaching; she merely asserts that it is unfair to terminate the dealership after her husband had spent 18 years building up the business and made capital investments such as delivery vehicles, etc. A nonassignability clause is of course not inherently suspect, it is routinely enforced. (See cases collected in 1 Witkin,

Summary of Cal. Law (8th ed. 1973) Contracts, § 731.) In *Weissensee* v. *Chronicle Publishing Co.* (1976) 59 Cal.App.3d 723 [129 Cal.Rptr. 188], a challenge to the nonassignability clause of the very contract here in question was held to be "obviously without merit." (*Id.*, at p. 727.)

Mrs. Conway asserts in her declaration that "the independent newspaper business constituted community property," "we were told by [SFNA's circulation manager] that our dealership business would continue indefinitely as long as we did a good job," "we were never told prior to my husband's death that our dealership would terminate upon the death of either of us," and "we believed that we would be able to leave our interest in our dealership business to our heirs upon our death." As these allegations address the issue of reasonable expectations rather than unconscionability, they will be discussed under that heading.

We note initially the adroit use of the plural pronoun. But SFNA's contract was only with John R. Conway, and the widow may not bootstrap herself to the status of party. SFNA could not bring specific performance to compel her to undertake any duty specified in the contract and as a corollary, she has no standing to enforce it. A California judge's wife undoubtedly has a community property interest in his salary, but that does not give her the right to succeed to his job should he die in office.

As to the merits of the claim, we emphasize that expectations have to be reasonable in order to affect the enforceability of a contract of adhesion. (*Parr* v. *Superior Court* (1983) 139 Cal.App.3d 440, 445-446 [188 Cal.Rptr. 801].) In the light of that criterion, a look at the contract is instructive.

First the dealer could not *reasonably* have expected the nonassignability clause to mean something other than what it says, it being conclusively established for purposes of this lawsuit that the proviso is clear and unambiguous. And failing to read the contract is no excuse, otherwise all contracts of adhesion would be unenforceable at the whim of the adhering party. (*Parr* v. *Superior Court, supra,* 139 Cal.App.3d 440; *A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114, 38 A.L.R.4th 1].) In addition, the contract requires the dealer to make sales and deliveries of newspapers promptly and timely, to keep adequate records and to make earnest, conscientious and continuing efforts to promote and increase circulation. In other words, the contract calls for skill, energy and initiative. It taxes credulity that a publisher who has a right to exact such performance for himself and the newspaper customers would voluntarily saddle himself with the possibly irresponsible widow and lazy

offspring of a dealer, or that the dealer would expect such a result. The fact that this particular widow and daughter are competent and diligent businessmen is of course irrelevant. And if any doubt remained as to a dealer's reasonable expectations, such doubt would be dispelled by a look at paragraph 7 under the general heading of "Dealer agrees:". That paragraph reads: "To furnish a *temporary* substitute *acceptable to Printing Company* at Dealer's expense whenever such a substitute is necessary to perform Dealer's obligation under this agreement." (Italics added.) If SFNA was unwilling to take a temporary substitute without reserving the right of veto, could a dealer reasonably expect that SFNA would so accept a permanent one?

Because it is not likely that Miller will prevail on the merits, a writ of mandate will issue directing the trial court to dissolve the injunction pendente lite.

Agliano, Acting P. J., and Turrone, J.,* concurred.

A petition for a rehearing was denied July 19, 1985, and the petition of real party in interest for review by the Supreme Court was denied September 11, 1985. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.