Filed 7/3/14  Jeffrey v. Automobile Club of So. California CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KATHLEEN JEFFREY, | |
| Plaintiff and Respondent, | E056224 |
| v. | (Super.Ct.No. CIVRS1110687) |
| AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Keith D. Davis, Judge.  Reversed.

Manuel Dominguez for Defendant and Appellant.

Portner Law Offices and Michael G. Portner for Plaintiff and Respondent.

### I.  INTRODUCTION

Plaintiff Kathleen Jeffrey sued her former employer, defendant Automobile Club of Southern California (ACSC), alleging claims arising from her employment, including harassment and discrimination based upon her sex, age, and disability.  ACSC filed a

1

motion to compel arbitration based upon an arbitration agreement Jeffrey signed when she was hired. The trial court found that the arbitration agreement was unconscionable and, therefore, unenforceable. Applying a de novo standard of review, we conclude that Jeffrey failed to establish that the agreement was unconscionable. We therefore reverse.

## II. FACTUAL AND PROCEDURAL SUMMARY

ACSC hired Jeffrey in December 2004 as a "Field Sales Agent." As part of her application for employment, Jeffrey was required to sign a three-page "MUTUAL AND BINDING ARBITRATION AGREEMENT." The agreement provides that the parties shall resolve "through final and binding arbitration" "any and all claims of any nature or kind arising out of, relating to, or connected with" Jeffrey's employment or termination of employment with ACSC. Either party may, however, obtain interim or provisional equitable relief from a court "if the arbitration award may be rendered ineffectual in the absence of such relief." The time within which arbitration must be commenced is coextensive with the applicable statute of limitations.

The arbitration shall be administered under "the then-applicable rules of JAMS/Endispute . . . or the American Arbitration Association [(AAA)]," except as modified by the agreement. If the parties cannot agree which rules will govern, the JAMS/Endispute rules will apply. The arbitration shall be held in the county where Jeffrey worked when the claims arose or, if more convenient for her, where she last worked for ACSC.

2

The arbitrator is required to "follow applicable law." The award must be in writing and the arbitrator must state the conclusions and findings upon which the award is based. The agreement is expressly "governed by the laws of the State of California and/or the Federal Arbitration Act [(FAA)], as applicable."

ACSC agrees to "pay the fees and expenses unique to the arbitration process, i.e., the fees and expenses beyond those [Jeffrey] would have been required to pay" if the claim had been brought in court. Each party pays their own costs and attorney fees. However, the arbitrator may include reasonable fees and expenses as part of the arbitration award to the extent permitted by applicable law.

The agreement includes a so-called "confidentiality" term and a provision governing discovery, both of which we will discuss in some detail below.

The terms of the agreement "are severable. The invalidity or unenforceability of any provision shall not affect the application of any other provision."

The agreement concludes: "The parties have read this Agreement and hereby voluntarily and knowingly agree to and accept all of its terms, conditions, and benefits." The agreement is signed by Jeffrey and an ACSC representative.

ACSC terminated Jeffrey's employment on June 2, 2010.

Jeffrey filed a complaint against ACSC in the superior court in December 2011. She alleged 14 employment-related causes of action, including claims based upon the California Fair Employment and Housing Act for unlawful employment termination and discrimination based on age, sex, and disability.

3

ACSC filed a motion to compel arbitration based upon the written arbitration agreement, California law, and the FAA. The motion is supported by a declaration from an ACSC representative stating that at the time Jeffrey was hired, all ACSC job applicants were required to enter into arbitration agreements in order to commence employment. The declarant authenticated a copy of Jeffrey's arbitration agreement and stated that she entered into that agreement upon being hired in December 2004.

Jeffrey opposed the motion on the ground that the arbitration agreement is procedurally and substantively unconscionable. In her accompanying declaration, Jeffrey stated the following: "While it appears that I did sign this Agreement in 2004, I do not remember having signed it. If I did sign it, it was only as part of a large set of other documents which I signed at the time my employment began. I do know for certain that no one from [ACSC] ever sat down with me and discussed the arbitration agreement, or discussed any of the provisions of the agreement as if that had happened I would certainly have remembered it. This agreement was simply provided to me as another document that I had to sign in order to be employed. I was never given any chance to negotiate any of the terms of this agreement as I would certainly [have] remembered any such discussions if they had occurred. In addition, the arbitration agreement refers to rules of the [AAA] and the rules of JAMS/Endispute. I have no idea what these rules are and at the time my employment began I also had no idea what these rules might be."

The trial court denied the motion to compel arbitration based on findings that the arbitration agreement was both procedurally and substantively unconscionable. It was

4

procedurally unconscionable, the court explained, because (1) the arbitration rules referred to in the agreement were not provided to Jeffrey and (2) Jeffrey "had no opportunity to read or review or negotiate any of the terms of the arbitration agreement." The agreement was substantively unconscionable because of the confidentiality requirement and the limited right to discovery. Finally, the court concluded that the unconscionable provisions could not be severed from the agreement.

ACSC appealed.

## III.  DISCUSSION

A.  *General Legal Principles and Standard of Review*

ACSC contends, and Jeffrey does not dispute, that the FAA applies in this case. Under section 2 of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  (9 U.S.C.A. § 2.)[1]  One such ground is unconscionability.  (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __, __ [131 S.Ct. 1740, 1746]; Civ. Code, § 1670.5; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*); *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 484.)[2]

---

[1]  California law has a similar provision.  Code of Civil Procedure section 1281 provides:  "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

[2]  Our state Supreme Court has recently explained that when the FAA applies, the doctrine of unconscionability cannot be applied when "it interferes with fundamental attributes of arbitration."  (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142-1145.)  Such "fundamental attributes" include ""'lower costs, greater efficiency and

*[footnote continued on next page]*

"'One common formulation of unconscionability is that it refers to "'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, "'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'"" [Citation.][']" (*Sonic-Calabasas A, Inc. v. Moreno, supra,* 57 Cal.4th at p. 1133.)

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citation.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."' [Citation.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).)

"Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on "'a sliding scale.'" [Citation.] '[T]he more substantively oppressive the contract term, the less

_____

*[footnote continued from previous page]*
speed, and the ability to choose expert adjudicators to resolve specialized disputes."
[Citation.]' [Citation.]" (*Id.* at p. 1143.)

6

evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Pinnacle, supra,* 55 Cal.4th at p. 247, quoting *Armendariz, supra,* 24 Cal.4th at p. 114; see also *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406.)

The party opposing arbitration on the grounds of unconscionability bears the burden of proving that defense. (*Pinnacle, supra,* 55 Cal.4th at p. 236.)

"'Unconscionability is ultimately a question of law for the court.' [Citations.]" (*The McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, 1347.) When, as here, there are no material conflicts in the evidence, we review the trial court's determination of unconscionability and the court's denial of arbitration de novo. (*Ibid*.; *Pinnacle, supra,* 55 Cal.4th at p. 236; see also *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 820-821.)

B. *Procedural Unconscionability*

Jeffrey argues that the arbitration agreement is procedurally unconscionable for two reasons. First, the agreement is an adhesion contract. It was, she asserts, given to ACSC employees on a "take it or leave [it] basis," without the opportunity to negotiate, and required as a condition of employment. Courts have recognized "that adhesion contracts in the employment context typically contain some measure of procedural unconscionability." (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1470 (*Roman*).) This is because "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement

7

stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra,* 24 Cal.4th at p. 115.)

However, the fact that an arbitration agreement is an adhesion contract is not dispositive. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704; *Roman, supra,* 172 Cal.App.4th at pp. 1470-1471 & fn. 2.) Although adhesion contracts are, by their nature, to some degree oppressive, the element of surprise is also a factor in determining procedural unconscionability. (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 689-690; *The McCaffrey Group, Inc. v. Superior Court, supra,* 224 Cal.App.4th at p. 1349.)

"Surprise" occurs when, for example, the arbitration provision ""''is hidden within a prolix printed form."''" (*Pinnacle, supra,* 55 Cal.4th at p. 247; see also *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 392, fn. 1 (*Trivedi*) ["Lack of prominence is one factor the court may consider in determining if the clause is procedurally unconscionable."].) In one case, for example, a finding of procedural unconscionability was supported by the fact that the arbitration provision was located in the 36th of 37 sections of an agreement "comprised of 11 pages of densely worded, single-spaced text printed in small typeface." (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1146.) In another case, by contrast, the court enforced an "arbitration provision [that] was not buried in a lengthy employment agreement. Rather, [the provision] was contained on the last page of a seven-page employment application,

8

underneath the heading 'Please Read Carefully, Initial Each Paragraph and Sign Below.'" (*Roman, supra,* 172 Cal.App.4th at p. 1471; see also *Pinnacle, supra*, 55 Cal.4th at p. 247, fn. 12 [no evidence of surprise where arbitration provisions in a declaration of covenants, conditions, and restrictions were identified with bold, capitalized, and underlined headings].)

Here, the arbitration agreement was not hidden or buried in another agreement. It is a stand-alone, three-page document with the title, "MUTUAL AND BINDING ARBITRATION AGREEMENT" in bold, capitalized letters. The initial paragraph, in bold-face type, summarizes the nature of the document as an agreement "to resolve through final and binding arbitration any and all claims" between the parties, and includes the instruction: "Please read this Agreement carefully as it contains important provisions about our agreement and the process governing the arbitration of all disputes between us." (Bolding omitted.) The terms are stated under bold-face headings such as, "Claims Subject to Arbitration," "Arbitration Procedure and Location," "Arbitrator Selection and Award," and "Discovery and Motions." (Bolding omitted.) The final paragraph reads: "The parties have read this Agreement and hereby voluntarily and knowingly agree to and accept all of its terms, conditions, and benefits." Immediately below these words, Jeffrey signed, printed her name, and dated the document. The

conspicuous nature of the agreement and Jeffrey's express acknowledgement weigh against a finding of procedural unconscionability.[3]

Jeffrey further argues that the agreement is procedurally unconscionable because she was not provided with a copy of the arbitration rules referenced in the agreement. She relies upon *Trivedi*, which states that "[n]umerous cases have held that the failure to provide a copy of the arbitration rules to which the employee would be bound supported a finding of procedural unconscionability." (*Trivedi, supra,* 189 Cal.App.4th at p. 393.) This aspect of *Trivedi* was recently explained and limited in *Lane, supra,* 224 Cal.App.4th at page 690. The *Lane* court agreed "that the failure to attach the arbitration rules could be a factor in support of a finding of procedural unconscionability, but disagree[d] that the failure, by itself, is sufficient to sustain a finding of procedural unconscionability." (*Ibid.*) The question, the court explained, was whether the failure to provide the rules "would result in surprise to the party opposing arbitration." (*Ibid.*) In that case, the court concluded that "[t]here could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties—the AAA rules are available on the Internet." (*Id.* at p. 691.)

---

[3] Although Jeffrey states she does not remember signing or reading the agreement, she does not argue that no contract was formed for that reason. (See *Pinnacle, supra,* 55 Cal.4th at p. 236 ["arbitration clause within a contract may be binding on a party even if the party never actually read the clause"]; *San Francisco Newspaper Printing Co. v. Superior Court* (1985) 170 Cal.App.3d 438, 443 ["failing to read the contract is no excuse, otherwise all contracts of adhesion would be unenforceable at the whim of the adhering party."].)

The *Lane* court's response to *Trivedi* is problematic in this case because the agreement refers to "the *then*-applicable rules." In the context of the agreement, it is clear that "then-applicable" means the applicable rules in effect *at the time a claim is made*. Because AAA and JAMS/Endispute may amend or create new rules between the time the contract is made and a claim is asserted, the fact that the rules are available on the Internet at the time the contract is made does not prevent either side from being surprised by the rules applicable at the time a claim is made. Indeed, ACSC acknowledges that the rules Jeffrey could have been given when she signed the agreement in 2004 would "more than likely contain Rules that are outdated, no longer currently valid[,] and could possibly not be applicable as the Employment Law in California has changed so dramatically in the last several years." Because the "then-applicable rules" could not be provided to Jeffrey—or obtained via the Internet—at the time she signed the agreement, we agree with Jeffrey that the reference to such rules is a factor weighing in favor of finding the agreement procedurally unconscionable.[4]

---

[4] Jeffrey also contends that the "then-applicable" language renders the entire agreement fatally uncertain, precluding the formation of a contract at all. We disagree. Although the precise rules that would apply to a future claim was not known to either party at the time the contract was signed, the applicable rules could be ascertained and "made certain" when performance became due. (See Civ. Code, § 3538 ["That is certain which can be made certain."].) Just as a purchase and sale contract that provides for a price to be determined by reference to subsequently-derived data is not void for uncertainty (see, e.g., *Mancuso v. Krackov* (1952) 110 Cal.App.2d 113, 115-116; *Carver v. Teitsworth* (1991) 1 Cal.App.4th 845, 853), an arbitration agreement is not fatally uncertain when the applicable rules can be subsequently determined with certainty at the time of performance.

Moreover, it is not uncommon to incorporate statutes into an agreement even though the Legislature may subsequently amend the statutes. In *Armendariz*, for

*[footnote continued on next page]*

11

However, the effect of the unavailability of the then-applicable rules is limited by language in the agreement that such rules apply "except as . . . may be modified by this Agreement." In *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, a similar provision was interpreted to mean that the specific provisions of the agreement "trump[] the otherwise applicable AAA and JAMS rules." (*Id.* at p. 511.) Here, the agreement provides specific rules as to the location of the arbitration, payment of fees and costs, the use of a single arbitrator, the requirement that the resolution of the claim be based solely upon the governing law, the relief that may be awarded, the requirement that the award be in writing and include a statement of conclusions and findings, the timing of the award, and discovery. Because such specific terms will control over any contrary provision in the arbitration organization's rules, there is little danger of any unfair surprise to Jeffrey.

Although the adhesive nature of the arbitration agreement and the failure—indeed, inability—to provide the applicable AAA or JAMS/Endispute rules to Jeffrey support a finding of procedural unconscionability, we conclude that the degree of procedural unconscionability is low because of (1) the conspicuousness of the agreement, (2)

---

*[footnote continued from previous page]*
example, the parties agreed to submit disputes "to binding arbitration pursuant to the provisions of title 9 of Part III of the California Code of Civil Procedure, commencing at section 1280 et seq. *or any successor or replacement statutes*." (*Armendariz, supra,* 24 Cal.3d at p. 92, italics added.) There is nothing in *Armendariz* to suggest that the agreement was illusory or unenforceable because of the possibility that the referenced statutes could be amended.

12

Jeffrey's signed acknowledgment, and (3) the specification of key terms that would trump any later-disclosed rule unfavorable to Jeffrey.

C. *Substantive Unconscionability*

The trial court found that the arbitration agreement was substantively unconscionable based upon two provisions of the agreement: the confidentiality requirement and limits on discovery. On appeal, Jeffrey asserts these two points as well as others. We will address each and conclude that the agreement is not substantively unconscionable.

### 1. The Confidentiality Provision

The confidentiality provision is: "To the extent permitted by law, the hearing, other proceedings, and all filings shall be treated in a private and confidential manner by the arbitrator and all parties and representatives, and shall not be disclosed except as necessary for any related judicial proceedings. Any court filing to confirm, otherwise enforce or contest the arbitrator's award or decision shall be made under seal to the fullest extent permitted by applicable law."

Initially, we observe that California courts that have considered similar provisions have held that they are not substantively unconscionable. (See *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 714; *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 408; see also *Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 731-732 [Fourth Dist., Div.

13

Two] [agreement to keep transcript of judicial reference proceeding confidential was not unconscionable].)  We have not been referred to any contrary California authority.

Jeffrey contends, however, that the provision would "protect the employer by restricting information against it and to hinder the ability of its employees to pursue discovery, undertake investigation, gather evidence, and contact witnesses necessary to their cases."  We disagree with Jeffrey's construction of the provision.  The provision calls for the parties to treat "in a private and confidential manner" "the hearing, other proceedings, and all filings . . . except as necessary for any related judicial proceedings." While the provision plainly prevents the parties from disclosing what happens at the arbitration hearing and other proceedings and the content of filings, we do not construe it as hindering in a material way Jeffrey's discovery, investigation, evidence gathering, or her contact with witnesses.  Indeed, in its opening brief in this appeal, ACSC represents that the provision "does not prevent an employee from contacting other employees, calling them as witnesses, preparing the case, or in litigating the employee's case."  To the extent it could be construed more broadly, we reject that construction based on the principle that ambiguous language should be construed against the party that drafted it. (Civ. Code, § 1654; *Imburgia v. DIRECTV, Inc.* (2014) 225 Cal.App.4th 338, 345; *Harris v. Bingham McCutchen LLP* (2013) 214 Cal.App.4th 1399, 1406.)

Jeffrey relies on *Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066.  In that case, the challenged arbitration provision included the following confidentiality provision:  "Except as may be necessary to enter judgment upon the award or to the

14

extent required by applicable law, all claims, defenses and proceedings (including, without limiting the generality of the foregoing, the existence of a controversy and the fact that there is a mediation or an arbitration proceeding) shall be treated in a confidential manner by the mediator, the Arbitrator, the parties and their counsel, each of their agents, and employees and all others acting on behalf of or in concert with them. Without limiting the generality of the foregoing, no one shall divulge to any third party or person not directly involved in the mediation or arbitration the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration, except as may be necessary to enter judgment upon the Arbitrator's award as required by applicable law." (*Id.* at p. 1071.)

The language in *Davis* is broader and more restrictive than the challenged provision in this case. In particular, the employee in *Davis* may not divulge the parties' claims and defenses, the content of "papers," or even the existence of a controversy with the employer. The *Davis* court interpreted the provision as placing "restrictions [that] would prevent an employee from contacting other employees to assist in litigating (or arbitrating) an employee's case. An inability to mention even the existence of a claim to current or former O'Melveny employees would handicap if not stifle an employee's ability to investigate and engage in discovery." (*Davis v. O'Melveny & Myers, supra,* 485 F.3d 1066 at p. 1078.) As we construe the confidentiality provision in the present case, however, these concerns do not apply.

15

2. The Discovery Provision

Regarding discovery, the agreement provides that each party "shall have the right to take the depositions of up to three individuals and any expert witness(es) designated by the other party, and to serve document requests and up to 35 special interrogatories. The arbitrator shall have the authority to allow additional discovery, including the issuance of subpoenas, that he or she deems appropriate based upon a showing of 'good cause' taking into account the parties' mutual desire to have a simple, informal, fast, and cost-effective dispute resolution mechanism."

In *Armendariz, supra,* 24 Cal.4th 83, the Supreme Court construed the arbitration provision in that case as incorporating Code of Civil Procedure section 1283.05, which generally permits discovery in arbitration proceedings as if the parties were litigating a civil action in court, except that depositions may only be taken with the approval of the arbitrator. (*Armendariz, supra,* at p. 105 & fn. 10.) The court explained that parties to an arbitration agreement are "permitted to agree to something *less than* the full panoply of discovery provided in Code of Civil Procedure section 1283.05," but added that the plaintiffs, who alleged sexual discrimination claims against their employer, "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, *as determined by the arbitrator(s) . . . .*" (*Id.* at pp. 105-106, italics added.)

This aspect of *Armendariz* was applied in *Roman, supra,* 172 Cal.App.4th at pages 1475 and 1476. In *Roman*, discovery under the challenged arbitration agreement was

16

governed by AAA rules, which provided: "'[T]he arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.'" (*Id.* at p. 1475.) Under this rule *all* discovery methods are subject to the arbitrator's prior approval. Nevertheless, based on *Armendariz*, the court held that the rule did not unduly limit discovery. (*Roman, supra,* at pp. 1475-1476.) *Roman*'s analysis was followed in *Lane, supra,* 224 Cal.App.4th 676, which also found the same AAA rule "satisfied the requirements of *Armendariz* for arbitration of statutory claims." (*Id.* at pp. 692-693.)

Here, Jeffrey's discovery rights are stronger than the discovery rights the plaintiffs had in *Roman* and *Lane*. In those cases, any and all discovery was subject to the arbitrator's prior determination that the discovery was "necessary" and "consistent with the expedited nature of arbitration." (*Roman, supra,* 172 Cal.App.4th at p. 1475; *Lane, supra,* 224 Cal.App.4th at p. 692.) Jeffrey, by contrast, has a "right" to discovery that the plaintiffs in *Roman* and *Lane* did not explicitly have, namely, the right to 35 special interrogatories, unlimited document requests, three individual depositions, and depositions of any designated expert. *In addition*, the arbitrator could, like the arbitrators in *Roman* and *Lane*, allow discovery upon a showing of "good cause," taking into account the parties' desire for "simple, informal, fast, and cost-effective dispute resolution." Clearly, Jeffrey's discovery rights are greater than the rights afforded the plaintiffs in *Roman* and *Lane*, which the respective courts determined were not

unconscionable.  It follows that the discovery provision in the present case is not unconscionable.

Jeffrey relies on *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702 and *Ontiveros v. DHL Express (USA), Inc., supra,* 164 Cal.App.4th 494.  Both are factually distinguishable.  In *Fitz*, the arbitration agreement limited the plaintiff to two individual depositions and any expert depositions.  (*Fitz v. NCR Corp., supra,* at p. 709.)  Exhibits and a list of witnesses were to be exchanged two weeks before the hearing.  (*Ibid*.)  Significantly, the agreement provided:  "'*No other "discovery" (i.e., depositions or demands for documents/information) will be permitted unless the arbitrator finds a compelling need to allow it*.'"  (*Ibid*.)  In determining "compelling need," the agreement further provides that "the arbitrator will only override the goal of achieving a prompt and inexpensive resolution to the dispute if *a fair hearing is impossible without additional discovery.*'"  (*Ibid*.)  The Court of Appeal concluded that this provision was more restrictive than the AAA discovery rule and "failed to ensure that employees are entitled to discovery sufficient to adequately arbitrate their claims."  (*Id.* at p. 721.)

In *Ontiveros*, the arbitration agreement limited the parties to one nonexpert deposition and made no mention of interrogatories.  (*Ontiveros v. DHL Express (USA), Inc., supra,* 164 Cal.App.4th at p. 511.)  Requests for production of documents and designated expert depositions were permitted.  Additional discovery was permitted "'only where the [a]rbitrator . . . so orders, upon a showing of substantial need.'"  (*Ibid*.)  In concluding that the discovery provision was unconscionable, the court focused on the

limitation of one nonexpert deposition and the fact that "the burden the agreement places on plaintiff to obtain further discovery is quite high, permitting additional discovery only by order of the arbitrator upon a showing of 'substantial need.'" (*Id.* at pp. 513-514.)

The discovery provision in the present case is more favorable to a plaintiff than the discovery provisions in *Fitz* and *Ontiveros*. More individual depositions are expressly permitted in this case (three) than in *Fitz* (two) and *Ontiveros* (one); unlike the plaintiffs in *Fitz* and *Ontiveros*, Jeffrey may propound interrogatories without having to seek the arbitrator's permission; Jeffrey has a right to document requests while the *Fitz* plaintiff did not; and the arbitrator's "good cause" standard for allowing additional discovery is probably easier to meet than *Fitz*'s "compelling need" or *Ontiveros*'s "substantial need" standards. For these reasons, *Fitz* and *Ontiveros* are not controlling.

3. Jeffrey's Other Contentions

The agreement provides that "either party may seek interim or provisional equitable relief from a court of competent jurisdiction if the arbitration award may be rendered ineffectual in the absence of such relief." The provision is similar to Code of Civil Procedure section 1281.8, subdivision (b), which provides that a "party to an arbitration agreement may file in the court . . . an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief."

19

Jeffrey first contends that the agreement improperly "excludes from its coverage either interim or provisional equitable relief." In another context, Jeffrey argues that the agreement "excludes the right of a party to seek interim or provisional equitable relief if the arbitration award may be rendered ineffectual in the absence of such relief." These statements are not correct. By using the permissive "may," the parties are not precluded from seeking interim or provisional relief in the arbitration proceeding. They can, but are not required to do so; they "may seek [such] relief from a court."

She further asserts that the agreement "ignores Code of Civil Procedure Section 1281.8[,] which allows the parties to seek provisional relief within the arbitration itself." This argument is flawed for two reasons. First, Code of Civil Procedure section 1281.8 provides for a party to an arbitration agreement to seek provisional relief *in court*; it does not address any right to seek such relief within the arbitration. Second, far from ignoring Code of Civil Procedure Section 1281.8, the provisional relief provision in the arbitration agreement essentially mirrors the language of the statute.

Finally, contrary to Jeffrey's suggestion, the provision is mutual and not limited to the types of claims that are more likely to be brought by the employer. (Compare with *Fitz, supra,* 118 Cal.App.4th at pp. 723-725 [arbitration policy was unfairly one-sided because it compels arbitration of claims more likely to be brought by the employee, but exempts from arbitration the types of claims more likely to be brought by the employer].)

Jeffrey further contends that the agreement fails to provide for all types of relief she would have in court based on the provision that the arbitrator's ruling on motions

20

"shall be final and binding on the parties subject to reconsideration by the arbitrator if based on newly discovered evidence, changes in the law, or other good cause." She asserts, without citing to authority, that this language would prevent the vacation or correction of the arbitration award on grounds set forth in Code of Civil Procedure sections 1286.2 and 1286.6. We reject the argument. The trial court has the power to vacate or correct arbitration awards on statutory grounds notwithstanding the parties' agreement that the arbitrator's decision is final and binding. (See, e.g., *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 12; *Burlage v. Superior Court* (2009) 178 Cal.App.4th 524, 531.)

D.  *Conclusion*

Because we find that the degree of procedural unconscionability is low and the terms of the agreement are not substantively unconscionable, we conclude that Jeffrey has failed to satisfy her burden of establishing unconscionability. Because the trial court concluded otherwise, we reverse.

## IV.  DISPOSITION

The order denying ACSC's motion to compel arbitration is reversed.

Appellant is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
                                                    Acting P. J.


We concur:

MILLER
                    J.

CODRINGTON
                    J.

22